.Farmers' & Merchants' Bank *v.* C. B. Parker *et al.**

(*Nashville.* December Term, 1923.)

1. **BILLS AND NOTES.** Material alteration in original, no defense
to action on renewal if discoverable by ordinary diligence prior to
renewal.

Material alteration of name of payee in original note, after its sign-
ing by maker and without his consent, is no defense in action
on renewal note, if prior to renewal maker by exercise of ordinary
diligence could have discovered facts. (*Post, pp.* 187-192.)

Cases cited and approved: Smith v. New Hartford Water Co., 73
Conn., 626; Banque Provinciale v. Arnoldi, 2 Ont. L., 624; Auld v.
Walker, 107 Neb., 676; Kennedy v. Welch, 196 Mass., 592; McDaniel
v. Whitsett, 96 Tenn., 10; Padgett v. Lewis, 54 Fla., 177.

2. **ALTERATION OF INSTRUMENTS.** Bills and notes. One adding
his name after execution and delivery of note held liable; addition
of party constituted material alteration.

One who, after execution and delivery of note by another, without
knowledge or consent of maker adds his name as maker or surety,
is liable on the note under Shannon's Ann. Code, section 3516a132,
nothwithstanding such addition constitutes material alteration
avoiding note as to original maker under section 3516a133, sub-
sec. 4. (*Post, pp.* 192-195.)

Cases cited and approved: Mersman v. Werges, 112 U. S., 139;
Rhoades v. Leach, 93 Iowa, 337; Smith's Leading Cases (9th Ed.),
vol. 2, p. 1167; Crandall v. First Nat. Bank, 61 Ind., 349.

Codes cited and construed: Secs. 3516a132, 3516a133(S.)

---

*On adding of another party to negotiable instrument after its
execution and delivery as a material alteration, see note in L. R. A.
1918F, 698.

Farmers' & Merchants' Bank v. Parker.

## FROM HICKMAN

*Headnote 1. 8 C. J., Bills and Notes, § 658; 2. 8 C. J., Bills and Notes, § 103, 2 C. J., Alteration of Instruments, § 82.

Appeal from the Chancery Court of Hickman County. —Hon. J. C. Hobbs, Chancellor.

R. L. Perry and Connor Bates, for the bank.

Knight & Beasley and Roberts & Cooper, for Parker et al.

Mr. Justice Chambliss delivered the opinion of the Court.

Defendants C. B. Parker and his father, J. A. Parker, have appealed from a decree for $2,800, interest, and attorney's fees, evidenced by a note executed by defendants. The defense pleaded was, in substance, that defendants did not owe the debt and that the original note, of which the note sued on was a renewal, had been issued without actual consideration and as the result of some form of fraudulent imposition. Along with this defense to the real merits of the controversy, defendants sought to rely upon an alleged alteration in the original note, charging that when signed it was payable to complainant bank and that the name of Ed. Russell, the cashier of the bank, was afterwards, substituted as payee without the consent of the maker. And, second, it was insisted that the renewal note sued on was altered by the addition of

the name of J. A. Parker to that of the sole original maker, C. B. Parker, subsequent to its delivery, without the knowledge or consent of the original maker.

Issues were submitted by defendants, and trial was had before a jury, and on the verdict of the jury the chancellor rendered his decree.

In this court it is insisted by errors assigned, following an overruled motion for a new trial, that the court erroneously took from the jury the consideration of certain issues, and also failed to give to findings on other issues proper consideration. In view of the finding of the jury under the first two general issues submitted, it must be conceded that what might be termed the underlying questions involved, that is, whether or not defendants are indebted to the complainants in the sum claimed, and whether or not the note sued on was procured by fraud, imposition, deception, or misrepresentation, have been conclusively disposed of in favor of complainants. The contentions here for consideration involve only the right of recovery upon the evidence of indebtedness sued on, based upon the effect of the alleged alterations hereinbefore set forth. There was a controversy of fact as to the alleged alteration in the original note, of which it appears that the note sued on was executed as a second renewal. It is insisted for appellants that complainants are bound to an admission of this alteration by allegations in the bill, and also that the proof sustained this claim, and that the court erroneously took from the jury the consideration of this question, submitted under issues 7 and 9, holding that they were immaterial issues of fact. If it be conceded either that the complainants have admitted the alleged alteration to have been made in

the original note, or that there was evidence sufficient to call for consideration by the jury of such an alteration, a question of law is presented as to the effect in this action brought on a renewal note of the alternation alleged.

Defendant C. B. Parker testified that when he signed the original note, dated April 8, 1920, he signed on a printed form reciting the name of the bank as payee, and this original note when now produced shows the name of the bank stricken and the name of Ed Russell, at the time cashier of the bank, substituted as payee. Russell testfies, and he is otherwise supported, that this change was made before, or contemporaneously with, the signing by Parker. A controversy of fact is thus presented. However, this note was payable on demand, and on July 1st, following, a new note was executed in like amount payable to the bank ninety days after date and the original note surrendered. Upon the maturity of this note a third note was executed, dated October 1st, in like amount, payable December 15th, and it is upon this last note that this suit is brought. Both of the renewal notes bear the signatures of both C. B. Parker and J. A. Parker as makers, and no question is made as to the validity of these signatures. If this suit was on the original note alleged to have been so altered as to the payee, there can be no question under the authorities that the alleged alteration was material and destructive of the instrument, and the issues of fact withdrawn by the court would have been material.

It is insisted for appellants that this defense is equally available against a renewal of a note originally altered. As between the original parties, in the absence of ratification, and against transferees not *bona-fide* purchas-

ers for value, the rule stated generally is that a renewal note is open to those defenses which might have been made against the original note; but so far as we are advised this rule has been applied only in cases in which the defenses sought to be interposed to the renewal note were such as raised questions of failure of consideration, in whole or in part, fraud, gambling debts, or other matters going to the validity of the indebtedness, rather than to the validity of the instrument only by which the indebtedness had been originally evidenced. For instance, counsel quote from 8 Corpus Juris, 444:

"As between the original parties, and as against transferees who are not *bona-fide* purchasers for value, a renewal note is open to all defenses which might have been made against the original note."

But in the text the sentence quoted is followed by a comma, and the paragraph proceeds:

"At least in so far as they relate to consideration, such as want or failure of consideration, fraud," etc.

An examination of the notes in this authority and the cases cited are consistent with and in some instances sustain the distinction above suggested, in so far, at least, as the original maker of such a paper is concerned. For example, where a note executed by a corporation for a valid consideration is invalid by reason of a defect in its execution, or for want of authority of the officer executing it, such invalidity does not attach to regularly executed notes given in renewal thereof. *Smith* v. *New Hartford Water Co.*, 73 Conn., 626, 48 Atl., 754.

Examples of cases in which the rule invoked by appellants has been applied are where the original note was for intoxicating liquors sold in violation of law, or for

confederate money, or where the original note was a forgery and the renewal was executed without knowledge amounting to ratification. The only case cited by counsel for the purpose of sustaining this specific insistence is that of *Banque Provinciale* v. *Arnoldi,* 2 Ont. L., 624; but in that case the rights of sureties were involved, and it was as to them only that the rule was applied.

Mr. Joyce, in his recent work, Defenses to Commercial Paper (volume 1, par. 361), states the rule generally very much as it is stated in Corpus Juris, supra, quoted by counsel for appellants, as follows:

"So a renewal, as between the original parties and against transferees who are not *bona-fide* purchasers for value, is open to all the defenses which might have been made against the original note."

To support his text he cites *Auld* v. *Walker,* 107 Neb., 676, 186 N. W., 1008; but an examination of this case shows that the defense sought to be interposed to the renewal note was fraud in the transaction out of which the execution of the original note grew, and upon which it was based. It was properly held that the defenses available to the original note were equally available to the renewal note in the hands of one not shown to be an innocent purchaser. Further illustration of this distinction is afforded by the leading case of *Kennedy* v. *Welch,* 196 Mass., 592, 83 N. E., 11, in which the court held that the new or renewal note was void for illegality because the consideration for the original note was an agreement touching the handling of intoxicating liquors prohibited by a State statute. This was a question going to the validity of the indebtedness evidenced by the original note and not merely to a defect in the instrument

evidencing the debt. The distinction is obvious. The writing is merely the evidence of the debt. The evidence may be invalid or inadmissible although the debt be due and recovery justifiable on the original consideration. The penalty doctrine approved in *McDaniel* v. *Whitsett,* 96 Tenn., 10, 33 S. W., 567, is applicable only to cases of fraudulent intent. The new note cures the defect in the form, or evidence basis, of the suit, and there being no defense going to the indebtedness itself, recovery may be had thereon. In this view of the rule of law these issues were properly held immaterial.

It is suggested that the learned chancellor withdrew the particular issues in question from the jury upon the theory that the execution of the renewal note so constituted a ratification, or waiver, of the alleged alteration in the name of the payee of the original note as to cut off this defense as a matter of law. It is true that generally speaking ratification will not be held binding without knowledge. It is apparently conceded by learned counsel that, if the renewal note in the instant case was given with knowledge at the time of the alleged alteration in the original note, the defense interposed would not be available to the maker. Not only is this well established but the rule is extended on sound principle, supported by analogy and by authority, to one giving such a renewal note who by the exercise of ordinary diligence could have discovered the facts, holding that if he fails to exercise this ordinary diligence he is as much bound as if he had had actual knowledge. A note in 8 Corpus Juris, 445, to this effect, cities and is supported by *Padgett* v. *Lewis,* 54 Fla., 177, 45 South., 29. The case at bar would seem to fall directly within the principle of

this rule. It is conceded that C. B. Parker took up the original note with the alleged alteration in its face at the time of the extention of his first renewal, and that he retained it in his possession and so held it when he executed both the first renewal and the second renewal on which this suit is brought. He could not have had a fuller opportunity to ascertain the facts. Should the court incline its ear to this highly technical defense, not going to the merits of his indebtedness, when he confessedly had before him and in his hands every opportunity to make discovery of the fact now relied on? This failure to exercise ordinary diligence is so apparent upon the record that it may with plausibility be contended that, the facts being undisputed, the question became one of construction for the court; the immateriality of these particular issues thus becoming apparent. For the reasons given we are of opinion that the assignments of error challenging the decree on the ground of an alleged alteration in the original note by a change of the name of the payee, made after its signing by the maker and without his consent, cannot be sustained. Especially in view of his manner of doing business with this bank through Cashier Russell and the confidence he reposed in Russell, according to his own statements and his habitual signing of paper in blank, with authority to Russell to complete the execution thereof by filling in all blanks, etc., we are persuaded that no injustice is done him. However, because of the reliance by counsel for appellants upon the alleged admissions of the complainants in their bill, we have felt constrained to consider these assignments upon their theory as to the facts.

The second alteration relied upon is the addition of the name of J. A. Parker, father of C. B. Parker, to the note sued on, as a maker in form, although apparently in fact a guarantor or surety for his son. The name of J. A. Parker similarly appears on the first renewal, executed July 1st, on maturity of which the note now sued on was executed, bearing date October 1st. C. B. Parker sets up that the name of his father was procured to be added to both of these notes by Cashier Russell after the execution and delivery thereof to the bank without his knowledge or consent. Learned counsel thereupon invoke the rule applied in numerous jurisdictions that such an addition is a material alteration which invalidates the note. No Tennessee case is cited, but without reviewing the authorities it must be conceded that this holding is sustained by the greater number of cases and text-books, although the contrary rule has been laid down by the supreme court of the United States in the leading case of *Mersman* v. *Werges,* 112 U. S., 139, 5 Sup. Ct., 65, 28 L. Ed., 641, opinion by Mr. Justice GRAY, followed by numerous State courts, the reasoning of which opinion strongly commends itself. However, we are constrained to the conclusion that the question is now settled by the provision of our Negotiable Instrument Law, that any alteration that changes the number or relation of the parties is a material alteration. Shannon's Ann. Code, section 3516a133, subsec. 4. But if it be granted that such an alteration was procured without the knowledge or consent of the first maker, and that the alteration is by virtue of this statute material, it does not follow that defendant J. A. Parker would be relieved from his liability. The rule is clearly otherwise. ''The general rule

is that the person who thus signs a note as an additional maker or surety will be bound as upon a new contract'' 2 Am. & Eng. Ency. of Law (2d Ed.), 234, citing numerous authorities.  So 3 R. C. L., 1115, after announcing the rule that the addition of another name to a note is a material alteration which will discharge the original parties not consenting thereto, concludes, ''and that the person so executing the note makes it his own,'' citing *Rhoades* v. *Leach,* 93 Iowa, 337, 61 N. W., 988, 57 Am. St. Rep., 281, which clearly holds that the added maker is liable. To the same effect, see Smith's Leading Cases (9 th Ed.), vol. 2, p. 1167; also, L. R. A., 1918F, p. 706, wherein the note reads:

''The added party has been held liable where there was no fraud or misrepresentation in procuring his signature, although he signed upon the faith of the liability of the original maker, who may have been released by the addition of another party,'' citing *Crandall* v. *First Nat. Bank,* 61 Ind. 349.

And, too, by Shannon's Ann. Code, section 3516a132, dealing with the effect of a material alteration, it is expressly provided that—''Where a negotiable instrument is materially altered without the assent of all parties liable thereon, it is avoided, *except as against a party who has himself made, authorized, or assented to the alteration,* and subsequent indorsers.''

This is in harmony with the rule above announced.  In the instant case J. A. Parker himself made the alteration by the addition of his name and comes within the exception covered by the underscored words above quoted from the statute, and it follows that the assignment of

error based upon this alteration must be overruled as to him.

Moreover, looking to the verdict of the jury on the issues relating to this alteration, we are persuaded, for reasons indicated in a memorandum filed herewith, that the decree of the chancellor against both of these defendants was justified on the facts, the contention that the signature of J. A. Parker was added without the knowledge or consent of C. B. Parker, the original maker, not being sufficiently established by the record as a whole; and the decree must be affirmed as to both of the appellants.