Farmers State Bank v. Shafer.

No. 27,024.

THE FARMERS STATE BANK OF QUINTER, *Appellant*, v. B. C. SHAFER, *Appellee.*

SYLLABUS BY THE COURT.

1. BILLS AND NOTES—*Fraud in Inception—Rescission.* It is held that an action on a note where the defense was fraud in its inception was tried upon the theory of a rescission and not on that of the recoupment of damages.

2. SAME—*Defense—Fraudulent Representation—Allegation of Offer to Return Consideration.* Whether or not in an action on a note brought by a transferee not a holder in due course an answer setting out that it was obtained by fraudulent representations must in order to state a defense allege an offer to return any consideration received for it, it is held that in the present case whatever requirement of that character existed was met by the offer made in the answer to dispose of all rights and property belonging to the defendant as a result of the transaction in which the note was given in such manner as the court should direct.

3. SAME—*Rescission—Waiver of Right—Acts Done Without Knowledge of Fraud.* It is held that neither the exchange of certificates received for notes obtained by fraud for others of a different nature, nor the renewal of the notes, effected a waiver of the right of rescission, inasmuch as they were found to have been made without knowledge of the fraud.

4. SAME—*Instructions—Facts Equivalent to Knowledge of Fraud.* No error was committed in refusing to instruct that one who was induced by fraud to execute a note was to be regarded as having acquired knowledge of the fraud whenever he had learned such facts as would cause a reasonably prudent person to suspect it and failed to investigate by all means reasonably available, nothing being said as to whether such investigation would have revealed the fraud.

5. SAME—*Fraudulent Representations—When Knowledge of Fraud Acquired—Findings—Evidence.* The jury's answer to a question as to where, when and from whom the purchaser of a note which was obtained by fraud acquired knowledge of the fraud, when considered in connection with other findings is held to have been sufficiently supported by the evidence and not to have excluded methods of acquiring such knowledge indicated in other findings.

Appeal from Sheridan district court; CHARLES I. SPARKS, judge. Opinion filed November 6, 1926. Affirmed.

*David Ritchie, Omer D. Smith,* both of Salina, and *F. A. Sloan,* of Hoxie, for the appellant.

*W. L. Sayers,* of Hill City, and *W. H. Clark,* of Hoxie, for the appellee.

Bills and Notes, 8 C. J. pp. 726 n. 59, 727 n. 62, 780 n. 34, 1079 n. 71, 1082 n. 11. Contracts, 13 C. J. pp. 611 n. 95, 624 n. 3, 738 n. 12.

The opinion of the court was delivered by

MASON, J.:   B. C. Shafer executed two "myself" notes for $2,500 each, which were delivered to an organization in the nature of a "common law trust," known as the Associated Mill and Elevator Company, in exchange for certificates of interest therein, called participation certificates.  The notes were bought before maturity by the Farmers State Bank of Quinter.  One of them was paid. The other was renewed by two notes given by Shafer to the bank, which brought this action on them against Shafer, who defended on the ground that the original note was obtained by fraudulent representation, of which the bank had knowledge at the time of its purchase.  Judgment was rendered in favor of the defendant, and the plaintiff appeals.

It was part of the proposed plan of the mill and elevator company to build an elevator at Quinter, and such an elevator was built. The company having passed into the hands of a receiver, an arrangement was made by which the defendant and others similarly situated surrendered their certificates of interest in the company in return for a conveyance of the elevator and its equipment to the bank as trustee for them.  The defendant's answer contained this language:

"Said defendant does hereby release and surrender and tenders into court for the use and benefit of whomsoever may be entitled thereto, all rights, interests, property and benefits belonging to defendant as a result of the execution of said note, and said defendant hereby offers to execute such transfer, release and acquittance as the court shall direct."

1.  In its brief the plaintiff says the first question to be determined is whether the defense is founded on the theory of rescission, as it contends, or on that of affirmance of the contract with recoupment for damages.  The defendant is noncommittal on this subject, but we agree with the plaintiff that he is to be regarded as having elected to proceed as upon rescission.  The language quoted from the answer indicates this, and the court's instructions confirm it, showing the case to have been tried on that basis.

2.  The plaintiff contends that it was necessary for the defendant, in order to defeat a judgment upon the notes, to return or offer to return to the mill and elevator company the participating certificates received from it.  It is often said that restitution is a prerequisite to a judgment for rescission because he who invokes equity must do

equity. Where one sued upon a note pleads fraud in its inception, asking no affirmative relief, there is room to argue that a defense is stated, it being left to the plaintiff to set out in a reply any acts relied on as constituting a waiver. Intimations seemingly of that tendency are found. (3 Williston on Contracts, § 1525; *Palmer v. Frost,* 86 Conn. 100; *McMillan v. Gardner,* 88 Kan. 279, 285, 128 Pac. 391.) The statement is sometimes made without qualification that fraud in the procurement of a note is a defense. (8 C. J. 780.) However, numerous cases hold that in an action on a contract an answer of fraud to be sufficient must allege facts necessary to a rescission or to a recoupment of damages. (8 C. J. 726.)

The present case, however, is affected by the circumstance that the action is brought by a transferee who—according to the answer and verdict—is not a holder in due course. In that situation it is said "a subsequent holder cannot avail himself of the failure to return the consideration." (8 C. J. 727.) In the case cited in support of that text the pertinent paragraph of the syllabus reads:

"A subsequent holder suing on notes claimed to have been procured by fraud could not object that the maker had not returned the property for which they were given."

In the corresponding part of the opinion it is said:

"The respondent bank (the plaintiff) being neither a party to, nor interested in, the contract for the flour receivers (for which the notes sued on were given), and dealer's appointment for the sale thereof, there is nothing in the contention that appellant must restore what he received, in order to be entitled to show that the notes in suit were fraudulently procured." (*Bank of Spearfish v. Graham,* 16 S. D. 49, 57.)

We need not accept in its entirety the view so expressed in order to sustain on this phase of the case the judgment here appealed from. The defendant was not deprived of his defense of fraud by the fact that the plaintiff sued him on the note before he had taken any affirmative action, either by bringing suit for rescission or by tendering to the mill and elevator company what he held as proceeds of the transaction in which the notes were given. Nor do we think he was required, in order to avail himself of the defense of fraud, to make a tender to the company and set it out in a supplemental answer after getting leave to file such a pleading. It was shown that the bank cashier brought suit in the federal court against the mill and elevator company, the financial situation of which was then very bad, and caused a receiver to be appointed to wind up its

affairs, with whom, in order to save anything for the stockholders, an adjustment was made resulting in the surrender of the original participation certificates in exchange for certificates of interest in the elevator, which was conveyed to the bank as trustee. The plaintiff, having purchased the notes given by the defendant to the mill and elevator company, would seem fairly to be regarded as substituted for it in its relations with him, especially as it appears no longer to have had any financial responsibility and to have been practically dissolved. The offer of the defendant in his answer to make any disposition of the rights and property held by him as a result of the transaction in which the notes were given was a sufficient protection to all concerned against his defeating the collection of the note sued on and at the same time retaining any part of the consideration for which it was given. The defendant by the terms of his answer having surrendered and tendered into court for the benefit of whomsoever was entitled thereto all the rights and property belonging to him as a result of the execution of the note, and having been freed from obligation upon the notes sued upon on the theory of rescission, is not in a position to assert title to an interest in the elevator, although no express order was made by the court with respect thereto.

3. The plaintiff further contends that the defendant's surrender of the participation certificate in exchange for an interest in the elevator property held by the bank as trustee amounted to a waiver of whatever right of rescission might previously have existed, and ended the whole controversy by a compromise. The soundness of this contention depends on whether the defendant knew of the fraud at the time the adjustment referred to was made—April 1, 1922. He testified (and the verdict shows credit was given to the testimony) that he had no reason to doubt the representations on which he gave the notes at the time he renewed them, which was October 4, 1922; that he then believed them, and that he had an investigation made in the summer or fall of 1923 for the purpose of ascertaining the truth in regard to them. The plaintiff urges that from the time spent in discussing the compromise (fixed at two hours by the bank's cashier) the defendant must have then been fully informed of the situation. The question, however, was a fair one for the jury. The court gave an instruction submitting the issue in these words:

"You are instructed that if any of the representations claimed by defendant

to have been made to him were made, were false, that he relied thereon, as stated in the instructions, and by reason thereof signed the original notes, then if, thereafter he had knowledge that such representations were false and he signed any of the subsequent renewal notes or the contracts or agreements referred to in the testimony, then he could not rely upon said representations for a defense in this case, so far as any renewal notes are concerned that he signed when he had such knowledge. If the defendant was in possession of knowledge such as hereinbefore stated in this instruction and thereafter signed a contract or an agreement for the purpose of securing an adjustment of his rights with the mill company, then he could not make the defense of fraud in this case, because he would have waived the same by said acts."

4. Complaint is made of the court's refusal to instruct that if the defendant at the time of entering into the arrangement for the exchange of certificates or of giving the renewal notes "had learned sufficient facts to make a reasonably prudent man suspect that he had been defrauded in the making of the original notes herein, then it was the duty of the defendant to make an investigation by all means reasonably available, and if he failed to do this and thereafter signed the instruments above mentioned he cannot recover in this action, and your verdict should be for the plaintiff." It is doubtful whether the evidence called for submitting the issue of the defendant having constructive knowledge of the fraud, but in any event the instruction requested was defective in making the failure to investigate fatal to the defendant's case whether or not the investigation would have developed the existence of the fraud. While there are situations in which a request for an instruction stating the law inaccurately may so challenge the attention of the court as to make erroneous the omission to discuss the subject in the charge, we do not think a reversal is required by the fact that the court gave no specific instruction on this phase of the matter.

5. A final complaint is that two of the findings of fact were not sustained by the evidence. The jury gave an affirmative answer to the fourth question—whether the plaintiff at the time it purchased the note had any actual knowledge or notice of the making of the false and fraudulent representations. The next question was: "If you answer 'Yes' to question No. 4, then state when, where and from whom said bank obtained such knowledge or notice." To this the reply was made: "December 7, 1920, at Farmers State Bank, from Oliver Wylie." The plaintiff urges that there was no evidence of Wylie's having been at the bank at the time named, and that this finding excludes from consideration all other methods by which

the bank might have acquired knowledge of the fraud. Wylie was a director of the bank and a member of the discount board. He took an active part in the·sale of the stock or interest for which the defendant gave his notes. There was evidence that the defendant was visited at his farm on December 7, 1920, by Wylie and a representative of the mill and elevator company, the two of them urging him to invest, and the representations complained of being made in the presence and with the connivance of Wylie. If the jury assumed without evidence that Wylie returned to the bank on the same day after the defendant had signed the notes, the error was not very important. The jury also found that the cashier knew of the representations and their falsity when the bank bought the notes, and that before that time the bank through him had an understanding with the company that the proceeds of the sale of such notes should be turned over to it in the form of negotiable certificates of deposit without retaining the bank funds which were required to be left therein by the terms of the contract between the bank and the company, which was shown to the defendant to induce him to give the notes. Where a jury is asked a question calling for an enumeration of all the items of a particular class, an item omitted from the answer is not thereby excluded from consideration if the omission is supplied in some other finding. (*Springer v. Railroad Co.*, 95 Kan. 408, 148 Pac. 611; *Brown v. Utilities Co.*, 110 Kan. 283, 203 Pac. 907.)

The judgment is affirmed.