No. 35,581

W. F. Howell, *Appellee*, v. E. N. Flora et al., *Appellants*.

(127 P. 2d 721)

Opinion filed July 11, 1942.

*Jesse I. Linder*, of Gove City, argued the cause for the appellants.

*William Wagner, Jr.*, of Wakeeney, argued the cause, and *W. H. Wagner*, of Wakeeney, was on the briefs for the appellee.

The opinion of the court was delivered by

Allen, J.: This was an action on a promissory note. The petition alleged:

"2. That on or about the 28th day of October, 1933, the defendants, E. N. Flora, and Ethelinda Flora, his wife, did then and there make, execute and deliver to the Quinter State Bank, Quinter, Kansas, their certain promissory note, in writing, whereby, for value received, the said defendants then and there promised to pay to the said The Quinter State Bank, Quinter, Kansas, the sum of eighteen hundred forty-six and 59/100 dollars on or before four months after the date thereof, together with interest thereon at the rate of eight percent per annum, from the date thereof, and said interest to be paid

semiannually. A true copy of said note showing endorsement thereon is hereto attached, made a part hereof and marked exhibit 'A.'

"3. Thereafter and before maturity thereof, The Quinter State Bank, Quinter, Kansas, for value received, endorsed and delivered said note without recourse to the plaintiff whoever since has been, and is now the owner and holder of said note for and on behalf of the stockholders of The Farmers State Bank of Quinter, Kansas, as hereinbefore set forth."

It was alleged that the action was brought on behalf of the stockholders of The Farmers State Bank, Quinter, Kan.; that plaintiff was duly authorized by all of such stockholders to prosecute the action for and in their behalf and in his own name. It was alleged that certain payments had been made on the note, the last payment having been made on June 1, 1938. Plaintiff asked judgment for the balance due on the note with interest and costs.

Defendants filed a motion to have plaintiff make the petition definite and certain by stating the exact number of the stockholders of The Farmers State Bank, to set forth by what authority plaintiff represents such stockholders, if such authority or power of attorney is in writing that a copy of such document be attached, that plaintiff be required to show the date on which the note was endorsed and delivered to plaintiff and the consideration that was paid to The Quinter State Bank, and that the petition should set forth for what purpose and by what authority the stockholders of The Farmers State Bank as such by and through the plaintiff purchased the note and why the note was not negotiated to The Farmers State Bank direct instead of the stockholders as alleged in the petition.

The motion was denied, and this ruling of the court is the first error assigned.

Under the code of civil procedure, G. S. 1935, 60-401, every action must be prosecuted in the name of the real party in interest, except as otherwise provided in section 60-403. Under the latter section "a person expressly authorized by statute" may bring an action without joining with him the person for whose benefit it is prosecuted.

The negotiable instruments law, G. S. 1935, 52-501, provides: "The holder of a negotiable instrument may sue thereon in his own name, and payment to him in due course discharges the instrument." In section 52-102 a "holder" is defined: " 'holder' means the payee or endorsee of a bill or note, who is in possession of it, or the bearer thereof." Section 52-508 reads: "In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were non-negotiable. . . ."

In *Manley v. Park,* 68 Kan. 400, 75 Pac. 557, the question of whether the holder of a bond was the real party in interest was before the court. It was there stated:

"When the owner of a note, for reasons satisfactory to himself, assigns it to another, thereby vesting in him the full legal title, the assignee becomes, so far as the debtor is concerned, the real party in interest. The original owner is still the person to be finally benefited by the litigation, but his legal demand is no longer against the maker of the note, but against the person to whom he has assigned it. When the obligor is sued by such assignee (no claim as innocent purchaser being involved), he can make any defense he could have made against the assignor; he is fully protected against another action; and in no way is it a matter of the slightest concern to him what arrangement between the plaintiff and the original creditor occasioned the assignment. This being true, it would be a sacrifice of substance to form to permit the defendant to defeat the action by showing a failure of consideration for the transfer, or that the plaintiff was bound to account to his assignor for a part or all of the proceeds. We hold that the objection to the judgment urged on the ground that plaintiff was not the real party in interest is untenable." (p. 401.)

The rule announced in *Manley v. Park,* has been followed in our later cases. *Lower v. Shorthill,* 103 Kan. 534, 538, 176 Pac. 107; *Goebel v. Anderson,* 123 Kan. 211, 255 Pac. 77; *Farmers Coöperative Union v. Reynolds,* 127 Kan. 16, 272 Pac. 108.

It is the legal title to negotiable paper and not the beneficial interest therein which controls as to the proper parties plaintiff in suits for the collection thereof. (8 Am. Jur., Bills and Notes, § 920.)

Motions to strike and to make definite and certain rest in the sound discretion of the trial court, and from rulings thereon an appeal does not ordinarily lie. Unless it appears the ruling affects a substantial right and in effect determines the action, it is not appealable. *Nelson v. Schippel,* 143 Kan. 546, 56 P. 2d 469. See *Estes v. Tobin Construction Co.,* ante, p. 564, this day decided. There was no error in the order of the trial court overruling the motion to make the petition definite and certain.

It is next contended that the court erred in sustaining plaintiff's demurrer to the answer of defendant.

The answer admits the execution and delivery of the note sued on in this action. The answer states:

"2. That the note sued on was executed without any consideration therefor excepting that said note was given in renewal of certain prior original note or notes executed and delivered by defendants to said Farmers State Bank of Quinter, Kansas, and defendants, having no written records or files thereon can no longer recollect the dates on which, and the amounts for which said prior notes were written."

The answer alleges that between the years 1921 and 1927 the Farmers State Bank of Quinter held one or more promissory notes of defendants; that in 1927 the Farmers State Bank was placed in the hands of a receiver; that the Quinter State Bank took over the assets, including certain notes which were taken for collection only, including the notes of defendants; that thereafter and by way of renewal of the note or notes, defendants executed and delivered to the Quinter State Bank the note sued on in this action; that by reason of the facts set forth, the plaintiff is not a holder in due course and that plaintiff holds the note "subject to the defenses hereinafter to be made against said note." The answer states:

"5. That five hundred dollars ($500) of said original note or notes was wholly without any actual consideration, and the supposed consideration which moved the defendants to execute said original note or notes, wholly failed, and said original note or notes was procured from the defendants by fraud and false representations, all of which facts are more fully set out hereinafter, to wit:

"6. That on or about April 2, 1919, H. C. Nunn, Paul Noble, and H. M. McQueen, and T. S. McQueen, and others to the defendant unknown, conspired together for the purpose of forming an organization, by means of which said persons would be able to and intended to fleece and defraud the wheat growers of Kansas, out of large sums of money, . . ."

The answer sets forth at length the scheme of the promoters and the fraudulent representations under which defendants and others were induced to purchase certificates in a common-law trust. We quote pertinent paragraphs from the answer:

"(6c) Defendants state that they were at that time wheat growers in the vicinity of Quinter, Kansas, and were therefore interested in encouraging and promoting the construction of storage facilities for grain, and that defendants believed and relied upon the above recited statements and representations and were deceived thereby, and by reason thereof defendants signed and delivered said original note or notes covering five hundred dollars ($500) or one thousand dollars ($1,000) of preferred stock in said Associated Mill and Elevator Company and that because of the lapse time, the same being approximately twenty (20) years and because they have no written records or files relating thereto defendants are positive that they had contracted to purchase shares of preferred stock in said mill and elevator company to the extent or value of five hundred dollars ($500) and that they may have contracted to purchase and did purchase preferred stock in said mill and elevator company to the extent or value of one thousand dollars ($1,000), and that it is possible five hundred dollars ($500) of the note sued on herein represents preferred stock in said mill and elevator company."

Does the answer, as above outlined, set up a valid defense to plaintiff's petition?

Our statute G. S. 1935, 60-313, provides:

"When a right of action is barred by the provisions of any statute, it shall be unavailable either as a cause of action or ground of defense."

In *Muckenthaler v. Noller,* 104 Kan. 551, 180 Pac. 453, it was held that the statute was not applicable to mere defenses.

In our recent case of *McCarthy v. Sink,* 152 Kan. 659, 671, 107 P. 2d 790, the cases where the doctrine in the Noller case was followed are examined and it was stated: "In the cases where the rule stated was applied, the defensive matter was connected with and grew out of the same transaction or matter which formed the basis of the plaintiff's claim." (p. 671.)

In the case before us the plaintiff's cause of action is predicated upon the last of a series of notes covering a period of years after the date of the original transaction. It is urged that all matters of defense contained in the answer are barred by the statute and that the rule in the Noller case has no application to the facts set forth in the answer. We find it unnecessary to determine that question and prefer to base our decision on a different ground.

In 8 Am. Jur., Bills and Notes, § 350, it is stated:

"The great weight of authority is that the renewal of an instrument precludes defenses of which the maker or drawer has notice, either as a result of the operation of the principle of waiver or that of estoppel, unless the defense is such that waiver or estoppel cannot operate against it. . . ."

In *Roess Lumber Co. v. State Ex. Bank,* 68 Fla. 324, 67 So. 188, it was there held:

"One who gives a note in renewal of another note, with knowledge at the time of a partial failure of consideration for the original note, or false representations by the payee, etc., waives such defense, and cannot set it up to defeat a recovery on the renewal note. And where one giving such renewal note either had knowledge of such facts and circumstances, or by the exercise of ordinary diligence could have discovered them and ascertained his rights it became his duty to make such inquiry and investigation before executing the renewal note, and if he fails so to do, he is as much bound as if he had actual knowledge thereof." (Syl. ¶ 1.)

In *Gay v. First Nat. Bank,* 172 Miss. 681, 160 So. 904, it was stated:

"Where a party has full knowledge of all defenses to a note and executes a new note payable at a future date, he then waives all his defenses and becomes obligated to pay the new note. *Tallahatchie Home Bank v. Aldridge,* 169 Miss. 597, 604, 153 So. 818. And where the facts and circumstances are such that a reasonably prudent person, judged by normal standards, would or should have made inquiry, which inquiry, if reasonably pursued and with ordinary

diligence, would have led to full knowledge of his defenses, then it becomes the duty of the party or parties to make such inquiry or investigation before executing the renewal note, and if he fail to do so he is as much bound as if he had actual knowledge of all the facts." (p. 686.)

See, to the same effect, *Farmers & Merch. Sav. Bank v. Jones*, 196 Ia. 1071, 196 N. W. 57; *Fipps v. Stidham*, 174 Okla. 473, 50 P. 2d 680; *Farmers & Marchants' Bank v. Parker*, 150 Tenn. 184, 263 S. W. 84, 35 A. L. R. 1253.

There are cases which at first glance would seem to be contrary to the decisions noted above. See the annotations 35 A. L. R. 1258, supplemented in 72 A. L. R. 600. But it will be seen that in most of those cases the question of whether or not the defendant had notice of the alleged defense at the time of the renewal of the first note was either not discussed or it appears definitely that he did not have actual notice and did not have knowledge of facts sufficient to put him on constructive notice of the fraud or other matter later urged as a defense.

The great majority of the courts hold where the maker of a note either has actual or constructive notice of fraud which would make his note only voidable, but not absolutely void that if he thereafter renews the note he waives such defense to the renewal note. See 72 A. L. R., p. 605.

The former decisions of this court are consistent with the majority view. In *Fraker v. Cullum*, 21 Kan. 555, it definitely appears that at the time of the renewal the accommodation maker had no knowledge of an alteration of the original note. It was held he could present his defense to the renewal note.

In *Calvin v. Sterritt*, 41 Kan. 215, 21 Pac. 103, it was stated:

". . . The general rule, as laid down in the text by Daniel in his work on Negotiable Instruments, is, that if the consideration of the original note be illegal, a renewal of it will be open to the same objection and defense (p. 163, § 163); but if at the time the renewal was executed, the parties signing knew of the fraud in the original, they will be regarded as purging the contract of fraud, and cannot then plead it. The test, therefore, is knowledge or want of knowledge of fraud in the original at the time of the execution of the renewal, and not privity with the original contract under which the first note was executed.

. . . . . . . . . . .

"It is established, therefore, that in this state the condition upon which the defense can be made is want of knowledge of the illegality of the original note, when the renewal note is executed. Of course it must necessarily be that under certain circumstances the giving of a new note would preclude the party from denying the consideration of the old one, but we think that in this

particular case evidence tending to show that there was no consideration for the original note, and hence none for the notes sued upon, ought to have been admitted. . . ." (pp. 219, 220.)

In *Farmers State Bank v. Shafer*, 121 Kan. 860, 250 Pac. 273, the question of the knowledge of the alleged fraud on the part of a maker of a note at the time of the renewal of that note arose as a question of fact. The jury found for the defendant maker. On appeal this court found that the court's instructions had been sufficient to present the question to the jury, and affirmed the judgment. But it appears clearly from the third and fourth paragraphs of the syllabus and from the corresponding parts of the opinion that the court was in full accord with the majority rule outlined above, namely, that actual or constructive knowledge of fraud on the part of the maker of a renewal note at the time of the renewal note will constitute a waiver of such defense to an action on the renewal note.

The statement of facts in *Farmers State Bank v. Shafer* shows that case arose out of the doings of the same common-law trust of which defendant now complains. At this late date defendant thinks "*that it is possible* five hundred dollars ($500) of the note sued on herein represents preferred stock in said mill and elevator company." Defendant alleges the elevator at Quinter was supposed to have been constructed in time to care for the wheat crop of 1921. This story was beginning to get a little old when the Shafer case reached this court in November, 1926. Yet, defendant admits he made the renewal note sued upon in this case on October 28, 1933, and made certain payments on it thereafter. It was certainly open to public observation that no elevator had been built in Quinter in 1921, and defendant had opportunity to discover that fact by 1933.

If "it is possible" that any money included in the 1933 note stemmed from the fraudulent transactions of 1919, certainly the allegations of defendants' answer would show he either had actual knowledge of the fraud before 1933, or that any reasonable man would have long been put upon notice of facts which would have led him to make sufficient inquiry to discover the fraud. Under the facts alleged any fraud which may have been inherent in the notes, included in those which were renewed by the 1933 note sued upon in this case, has been waived by the defendants.

The district court was correct in sustaining plaintiff's demurrer to defendants' answer and the rulings and judgment are hereby affirmed.