## MASON v. ACKLEY *et al.*

No. 5723. Opinion Filed November 2, 1915.

(152 Pac. 846.)

1. **GUARDIAN AND WARD—Collection of Money Loaned—Release of Security—Order of Court—Necessity.** A guardian who has loaned the money of a ward, which loan is evidenced by a promissory note payable to himself as guardian, has power to collect the same, and, if such note is secured by mortgage, to release and discharge the mortgage, without the intervention of the county court.

2. **SAME—Compounding of Debt—Approval by Judge.** Where the guardian accepts in satisfaction of such note the full amount, principal and interest, for which the makers were then obligated, at a time prior to the maturity thereof according to its tenor, such act on the part of the guardian does not constitute a compounding of the debt within the meaning of section 6543, Rev. Laws 1910, nor is the approval thereof by the county judge requisite.

(Syllabus by Bleakmore, C.)

*Error from District Court, Muskogee County;*
*R. P. de Graffenried, Judge.*

Action by A. J. Mason, guardian of Louisa Murrell, a minor, against Levi Ackley and others. Judgment for defendants, and plaintiff brings error. Affirmed.

*W. C. Franklin, P. J. Carey,* and *W. O. Rittenhouse,* for plaintiff in error.

*William S. Cochran,* for defendants in error.

Opinion by BLEAKMORE, C. This action was commenced in the district court of Muskogee county on the 26th day of August, 1911, by the plaintiff in error as plaintiff, against the defendants in error as defendants, on a promissory note and to foreclose a real estate mortgage given to secure the same. Defendants pleaded payment of the note and release of the mortgage. The cause was submitted upon an agreed statement of facts, supplemented by oral testimony on behalf of plaintiff. The court sustained a demurrer to the evidence, and rendered judgment for defendants. The facts as disclosed by the record are that on January 2, 1909, one Fred Bowers, as guardian of the person and estate of Louisa Murrell, had in his possession and under his control certain moneys of his ward and, under order of the proper county court, loaned to the defendants, Levi and Mary Ackley, $4,000 of said money, taking their promissory note therefor, due five years from date, bearing interest at the rate of 8 per cent. per annum, and a real estate mortgage upon property situate in Muskogee and Creek counties, to secure the same. On September 16, 1909, said note, with interest to that date, was paid to said guardian, who indorsed upon the same, "Received payment in full this 16th day of September, 1909," and executed a release and satisfaction of said mortgage, and caused the same to be properly entered of record in said county. Payment to the guardian and the release and satisfaction of the mortgage by him were made without an order of the court in which the guardianship was pending, previously secured, authorizing the same. On December 7, 1910, said guard-

ian filed his report, showing the receipt by him of the money in payment and satisfaction of said note and mortgage, and this report was approved by the court on the 24th day of March, 1910.    Subsequently said guardian died, and plaintiff was appointed in his stead.

The sole question presented for our determination is whether the payment by defendants to the guardian, without an order of the county court expressly authorizing the same, of the principal and interest up to the time of such payment, prior to the date at which the same matured by its terms, satisfied said note and released the makers thereof and the mortgaged property from further liability.    In *Bank of Welch v. Cabell et al.* 152 Pac. 844, *post,* p. 190, a case in which a guardian assigned and transferred a similar note prior to its maturity in consideration of the payment of the principal and interest due thereon to the date of the transfer, it was held:

"The legal title to a promissory note, made payable to the order of a designated person, is in the payee named, although he is designated as guardian in the face of the note; and, as both the legal title and the right to sue is in the payee as guardian, he may assign it, and his assignee has the right to sue on the note.

"Rev. Laws 1910, sec. 6565, cannot be construed to mean that in every case where an administrator is required to apply to the county court for an order allowing him to sell the property of his decedent, a guardian must also apply for such order, but it only provides that when under the provisions of the statute in regard to guardian and ward, it is necessary for him to apply for such an order, the procedure shall be the same as that provided in the case of an administrator so applying."

In the body of the opinion it is said:

"By section 6543, Rev. Laws 1910, the guardian is expressly given power to collect and sue for all debts due the ward, and the only contingency provided in this section for the interposition of the county court is where he compromises a debt due the ward. We can see no reason why the power to collect a debt does not carry with it the power to sell for its face value. In either event, the ward gets the amount due him. Of course, what we have said does not embrace cases where the guardian sells the debt for less than its face, for section 6543, Rev. Laws 1910, expressly provides that this can only be done with the approbation of the court."

The court also quotes with approval from *Engel v. Ortmann,* 5 Ohio Dec. 53 (3 Reprint, 237), as follows:

"The question is as to choses in action. These, it is admitted, he may collect when due. Nor do I believe it will be seriously contended that he may not receive payment by anticipation of the day of payment from the debtor. And if from the debtor, why not from any other person? And if from any other person, why may he not so transfer the note as to pass to the other person his right as against the debtor? The estate of the ward does not suffer in such case, for it receives payment advantageously, that is, in advance of the time, and the ward cannot suffer, for the guardian would have the right, at all events, to collect when due—he must depend at some time upon his guardian's integrity, and his bond for security."

The Texas statute relative to the powers and duties of executors and administrators prescribes that:

"No sale of any property belonging to an estate shall be made by an executor or administrator without an order of the court authorizing the same." (Rev. St. 1911, art. 3480.)

And with reference to those of guardians, it is provided:

"The provisions, rules and regulations which govern estates of decedents shall apply to and govern such guardianships, whenever the same are applicable and not inconsistent with any of the provisions of this title." (Article 4051.)

Construing these statutes, which provide a procedure circumscribing the scope of a guardian's dealing with his ward's estate, without express authority of the court, far more than does the law of this jurisdiction, the Supreme Court of that state, in *Browne et al. v. Fidelity & Deposit Company of Maryland*, 98 Tex. 55, 80 S. W. 593, a case in which the guardian, having taken a series of notes secured by a lien on real property, prior to the time when the same matured, accepted in payment thereof the principal sum, less a discount of 10 per cent., said:

"Although she could not compromise the notes with Browne and discharge him from the balance of the debt, she had the right to collect the notes without an order of the court. It is true she could not have forced Browne to pay, neither could he have compelled her to receive the money before the maturity of the notes; but, when the parties agreed that the payment be made before the maturity, it was not unlawful for her to receive the money, provided she exacted all that would accrue upon the notes, and, having collected them in part, her act was valid to that extent, and she held the money as guardian."

In the instant case the guardian collected the full amount of the note, principal, and interest to the date of payment; but it is argued that by reason of the fact that the note had not matured according to its terms, it was not due within the meaning of section 6554, Rev. Laws 1910, and that by accepting a sum less than the principal and the total amount of interest which would have accrued had payment been deferred until the expiration of

6—52

the full five years from its date, the guardian effected a compromise of the debt evidenced by the note, which he could lawfully do only with the approbation of the county court. With this contention we cannot agree. It is true that when paid the note was not due in the sense that the guardian could then have exacted payment, or that the makers thereof could have compelled acceptance of the amount paid, yet the principal of the note and certain interest thereon was, at all times after its execution and delivery, due to the guardian as payee for the benefit of his ward in the sense that there existed in his favor the makers' obligation to pay the same at the proper time. We consider that in section 6543, Rev. Laws 1910, providing that, "Every guardian must settle all accounts of the ward, and demand, sue for, and receive all debts due to him," the word "due" was employed in its broader signification, being intended to cover liabilities matured and unmatured, importing simply existing obligations, whether the time for payment thereof had arrived or not. It cannot be said as a matter of law that the payment of the principal and accumulated interest at a date before the time designated for payment in the instrument itself would result in either injury or advantage to the ward. Payment in advance of such time might inure to the substantial benefit of the estate, if prudently invested, or it might be dissipated by an incompetent, dishonest, or profligate guardian. Acceptance in satisfaction of the note of the full amount for which the makers were then obligated, at a time prior to the maturity thereof according to its tenor, cannot be held to constitute a compounding of the debt evidenced by such note within the meaning of the statute. It involved simply a modification of the provision of the contract as to the time when it could

be fully performed, which might have been deemed, and probably was in itself, mutually advantageous; but, in any event, it was a change to which the guardian, in the absence of connivance or collusion between him and the makers of the note in fraud of his ward, had power to assent, without the intervention of the court. There is not even a suggestion of bad faith in the transaction on the part of the makers of the note in question. In Woerner's American Law of Guardianship, sec. 62, it is said:

"The guardian's right to the custody and management of the ward's property implies the power to collect and receive moneys due the ward, and hence to receipt for the same, and, if secured by a mortgage, to discharge the mortgage, whether the money has become due or not."

The judgment of the trial court should be affirmed.

By the Court: It is so ordered.