## BANK OF WELCH v. CABELL *et al.*

No. 5774.   Opinion Filed November 2, 1915.

(152 Pac. 844.)

1.   **BILLS AND NOTES—Action by Assignee—Payee Designated as Guardian.** The legal title to a promissory note, made payable to the order of a designated person, is in the payee named, although he is designated as guardian in the face of the note. and as both the legal title and right to sue are in the payee as guardian, he may assign it, and his assignee has the right to sue on the note.

2.   **GUARDIAN AND WARD—Sale of Property—Order of Court—Necessity—Operation of Statute.** Rev. Laws 1910, sec 6565, cannot be construed to mean 'that in every case where an administrator is required to apply to the county court for an order allowing him to sell the property of his decedent, a guardian must also apply for such order, but it only provides that when, under the provisions of the statute in regard to guardian and ward. it is necessary for him to apply for such an order, the procedure shall be the same as that provided in the case of an administrator so applying. .

(Syllabus by Devereux, C.)

*Error from District Court, Carter County;*
*S. H. Russell, Judge.*

Action by the Bank of Welch against J. V. Cabell and others.   Judgment for defendants, and plaintiff brings error.   Reversed and remanded.

This was an action by the plaintiff, claiming to be the owner and holder of a certain promissory note, executed by the defendants in error.   The case was tried on an agreed statement of facts, which sufficiently discloses the questions raised in this court, and is as follows:

"(1) It is agreed that Henry B. Smith was appointed the guardian of the persons and estates of Mary A. B. Smith, Lela Smith, and Francis B. Smith, minors,

and that each of said minors were children of. Henry B. Smith.

"(2) That the guardian of said minors above named, Henry B. Smith, sold land belonging to said minors, and acted under order of the county court of Carter county, Okla., and that said sale was confirmed.

"(3) It is agreed that Henry B. Smith, as such guardian, loaned $600 of the funds derived from the proceeds of said sale to the defendants herein, and that the defendants executed a note for same as set forth in plaintiff's petition, and that said note was payable to Henry B. Smith, guardian.

"(4) It is agreed that before the maturity of said note, and while acting as guardian of said minors, Henry B. Smith indorsed and assigned and transferred said note to G. W. Dixon, and that said Dixon, without recourse, sold and assigned and indorsed said note to the plaintiff herein, the assignment by said Smith as guardian being made for a valuable consideration.

"(5) It is further agreed that said note was assigned and transferred by said Smith without any proceedings or order from the county court of Carter county, Okla., where the estates of said minors were being administered.

"(6) It is agreed that the plaintiff is duly organized and incorporated under the laws of the State of Oklahoma, for the purpose of doing a general banking business.

"(7) It is agreed that Mary A. B. Smith, Lela Smith, and Francis B. Smith are now minors and still under guardianship."

On these facts the trial court rendered judgment for the defendants, and the plaintiff brings the case to this court by petition in error and case-made:

*J. T. Coleman*, for plaintiff in error.

*J. A. Bass*, for defendants in error.

Opinion by DEVEREUX, C. (after stating the facts as above). The only question presented is whether a guardian has the power to transfer a negotiable note, payable to him as guardian, and the property of his wards, without an order of the county court authorizing him to do so, when such transfer is made for the full value of the note. In the absence of a statute, it is established that where a note is executed to a guardian on the face of the note, the legal title is in him, and that he can assign the note, and his indorsee can maintain an action on it.

The question now presented is, whether this rule is changed by our statute (Rev. Laws 1910, sec. 6569) which provides:

"The county court, on the application of a guardian or any person interested in the estate of any ward, after such notice to persons interested therein as the judge shall direct, may authorize and require the guardian to invest the proceeds of sales, and any other of his ward's money in his hands, in real estate, or in any other manner most to the interest of all concerned therein; and the county court may make such other orders and give such directions as are needful for the management, investment and disposition of the estate and effects, as circumstances require."

This section was construed by this court in *Duff v. Keaton,* 33 Okla. 92, 124 Pac. 291, 42 L. R. A. (N. S.) 472, in which it was held that a guardian could not lease his ward's land for oil and gas, without an order of the county court. But we think there is a clear distinction between leasing land and assigning a note. In case of a lease, it is important for the ward's interest that a fair rental should be obtained, and that the other provisions should be embraced in the lease protecting the

interest of the minors.   In oil and gas leases, especially—
and this was the matter under consideration by the
court in *Duff v. Keaton, supra*—the terms of the lease
as to the time of drilling, royalty reserved, forfeiture,
and other questions incident to this character of leases,
are of great consequence to the landowner, and it is
proper that the action of the guardian should be under
the control and supervision of the county court. But
no such reasons apply to the assignment of a note prior
to its maturity.   The note is for a sum certain, and no
possible harm can come to the estate of the ward if this
sum is collected, whether before or at its maturity.   In
the case of a lease, the guardian may make a bad bar-
gain, and thus injure his ward, but if he collects the full
amount due on a note, or sells it for the amount due
thereon, no management or control is necessary, for the
ward can by no possibility come to harm.   If the guard-
ian fails to account for the amount so coming into his
hands, his bond is liable therefor, whether he collects
the note at or before maturity, or sells it to another.
By section 6543, Rev. Laws 1910, the guardian is ex-
pressly given power to collect and sue for all debts due
the ward, and the only contingency provided in this sec-
tion for the interposition of the county court is where
he compromises a debt due the ward.   We can see no
reason why the power to collect a debt does not carry
with it the power to sell for its face value.   In either
event, the ward gets the amount due him.   Of course,
what we have said does not embrace cases where the
guardian sells the debt for less than its face, for section
6543, Rev. Laws 1910, expressly provides that this can
only be done with the approbation of the court.   In
*Gentry v. Owen*, 14 Ark. 396, 60 Am. Dec. 549, it is held:

7—52

"Where a note is made payable to one as the guardian of a minor, the legal title and right to sue is in the guardian, and he may assign it so as to vest the right of action in his assignee."

In *Jenkins v. Sherman*, 77 Miss. 884, 28 South. 726, it is held:

"The legal title to a promissory note, made payable to the order of a designated person, is in the payee named, although he be designated as the guardian of another, whose name appears on the face of the note; and the payee may transfer such title to an indorsee."

In *Engel v. Ortmann*, 5 Ohio Dec. 53 (3 Reprint, 237), in passing on this question, the court says: '

"The question is as to choses in action. These, it is admitted, he may collect when due. Nor do I believe it will be seriously contended that he may not receive payment by anticipation of the day of payment from the debtor. And if from the debtor, why not from any other person? And if from any other person why may he not so transfer the note as to pass to the other person his right as against the debtor? The estate of the ward does not suffer in such case, for it receives payment advantageously, that is, in advance of the time, and the ward cannot suffer, for the guardian would have the right at all events, to collect when due—he must depend at some time upon his guardian's integrity, and has his bond for security. Observe that I am not speaking of cases where the guardian submits to usury—that is not claimed here—but of cases where the estate is paid in full the sum then accumulated, and simply transfers the chose in action that the transferee may collect the amount from the debtor. Nor does the case present the question how far the ward's estate becomes liable upon an indorsement under such circumstances, but simply whether the transfer can be so made as to authorize third persons to collect from the debtor."

The defendants in error rely on *Jones v. Wheeler,* 23 Okla. 771, 101 Pac. 1112, but this case is not in point, as it decides only that an administrator cannot sell the personal property of the estate, including. a note belonging to it, without an order of court. The statute on which this decision rests, reads:

"No sale of any property . * * * of a decedent is valid unless made under order of the probate court, except as otherwise· * * * provided. All sales must be reported under oath, and confirmed by the probate court, before the title to the property sold passes." (St. 1893, sec. 1335; Rev. Laws 1910, sec. 6361.)

We have no such provision in the article of the statute dealing with the duties of guardians, unless, as argued by the defendants in error, it is provided for by Rev. Laws 1910, sec. 6565, but the statute only provides that when it is necessary for guardians to file a petition with the county court for an order of sale of any of the ward's property, the procedure must be that required concerning the estates of decedents.

This statute cannot be construed to mean that in every case where an administrator must apply to sell the property of his decedent, a guardian must also apply for such order, but only that when, under the provisions of the article on guardian and ward, he is required to apply for an order, the procedure shall be the same as in the case of an administrator. Take the case of a lease, authorized by the court, where the rent is payable in a part of the produce raised on the land. In our opinion, this section would not require an ·order authorizing the guardian to sell the portion of the crop received as rent, yet this could be the only result, if the construction contended for by the defendants in error is sound.

We therefore recommend that the judgment be reversed, and the case remanded, for further proceedings not inconsistent with this opinion.

By the Court: It is so ordered.