Metropolitan Life Insurance Company, appellee, v.
Abraham L. Cull et al., appellees: Dorothy V.
Porter Rothrock et al., appellants.

3 N. W. (2d) 645

Filed May 1, 1942.  No. 31273.

*George Evens, Howard Saxton* and *Robert Saxton,* for appellants.

*Cranny & Moore, W. M. Hopewell, C. O. Stauffer* and *F. A. Wright,* contra.

Heard before Simmons, C. J., Rose, Eberly, Paine, Carter and Messmore, JJ.

Paine, J.

Plaintiff as assignee brought action to foreclose its first mortgage of $37,000, and the petition recites that certain wards, now of age, are defendants, and have an interest, junior and inferior, because of a second mortgage on said premises, and an accounting is asked. The former wards filed cross-petition, in which they allege that plaintiff's mortgage is inferior to their interests in said property. Many other defendants answered, and Herbert Rhoades, the guardian of said wards, filed a special appearance, objecting to the jurisdiction of the district court over him, on the ground that the claims of the cross-petitioners against the guardian are pending in the probate court of Burt county, which has original jurisdiction thereof, upon which ground the special appearance was sustained by the district court,

from which order the cross-petitioners appeal. On the same date, December 19, 1938, an additional decree was entered, finding amount due plaintiff on its mortgage was $49,564.60, and declaring it to be a first lien. The cross-petition of the former wards was dismissed, from which decree appeal was also taken.

It is most difficult to set out even the substance of the pleadings, which occupy over 100 pages in the transcript, but the petition recites that on July 8, 1927, defendants Abraham L. Cull and Christine L. Cull executed and delivered to E. H. Lougee, Inc., their promissory note in the sum of $37,000, bearing interest at 5 per cent. per annum, with ten interest coupons. Coupons numbered 1 to 6 inclusive were fully paid and satisfied, but interest coupons due August 1, 1936, and August 1, 1937, each in the amount of $1,850, are past due and wholly unpaid.

The defendants executed and delivered to E. H. Lougee, Inc., a mortgage deed as security therefor upon certain tracts of real estate in Burt county, Nebraska, containing in all 402 acres. Said E. H. Lougee, Inc., sold and assigned said mortgage to the plaintiff, Metropolitan Life Insurance Company, and plaintiff is entitled to a foreclosure of its said mortgage for the satisfaction thereof.

The petition also alleges that Herbert Rhoades was the duly appointed guardian for Dorothy V. Porter Rothrock and Eloise E. Porter Shoup, and that they have now reached their majority and, together with Herbert Rhoades as guardian, have some interest in said mortgaged premises by virtue of the mortgage recorded February 27, 1936, securing $9,800, but that whatever interest they have, if any, is subject, junior and inferior to the lien of plaintiff's mortgage.

On March 11, 1938, Herbert Rhoades, guardian, filed a separate answer, admitting the corporate capacity of plaintiff and the execution of the note and mortgage, and denying every other allegation contained in the petition, and he further alleges that for years he was guardian of the defendants Dorothy V. Porter Rothrock and Eloise E. Porter Shoup, but that several years ago the said defendants be-

came of full legal age, and since have been acting for them-selves, under the advice of their counsel, in the management of their properties. Said answering defendant alleges that he has filed a full and complete report of his stewardship as such guardian in the county court for Burt county, and has heretofore asked for his discharge as such guardian. He prays that said action be dismissed as to him at plaintiff's costs.

The answer of Dorothy V. Porter Rothrock and Eloise E. Porter Shoup, filed March 12, 1938, alleges that said defend-ants have an interest in said mortgaged premises, which is superior and prior to the interest of any and all other par-ties to the suit.

For cross-petition they allege that on July 13, 1923, letters of guardianship on the estates of Frank L. Porter, Dale W. Porter, Fern F. Porter, Dorothy V. Porter and Eloise E. Porter, minors, were issued by the county court for Burt county to Herbert Rhoades; that on September 28, 1923, the said guardian received from the clerk of the district court the sum of $23,467.22 as trust funds for his said wards; that during and prior to the year 1927 said Herbert Rhoades was discharged as guardian of Frank L. Porter and Dale W. Porter, but continued to act as such guardian of the three remaining minors. On September 17, 1923, said guardian made application to the county court for authority to lend not to exceed $15,000 from the property of the minors Fern F. Porter, Dorothy V. Porter and Eloise E. Porter for a period of five years, at the rate of 6 per cent. interest, to Abraham L. Cull, of Oakland, Nebraska, W. S. Newmyer, of Lyons, Nebraska, A. C. Holmquist, of Oakland, and W. H. Harding, of Oakland. To secure the payment of said pro-posed loan, the said parties agreed to give a mortgage, sub-ject to a prior mortgage of $35,000, on the land in Burt coun-ty involved in this suit. Hearing on the application of the guardian to make loan was held on September 24, 1923, and on said date the county court entered an order approving the application, and directing the guardian to make said loan of $14,700 on the land, subject to a prior mortgage of $35,000

thereon, which mortgage had been assigned to the New York Life Insurance Company.

On March 2, 1927, Fern F. Porter became 21 years of age, and demanded her estate of the guardian, and in order to obtain money with which to pay Fern F. Porter the amount owing to her, the guardian, without any right or authority so to do, professed to enter into a new contract with the mortgagors, whereby the said Abraham L. Cull would advance sufficient cash to enable the guardian to pay to his said ward, Fern F. Porter, the $4,900 due her.

It is alleged that, pursuant to the wrongful agreement, said Herbert Rhoades, guardian, wrongfully canceled and released in writing the $14,700 mortgage, and the said Abraham L. Cull professed to give to the said E. H. Lougee, Inc., a new mortgage against said land for the sum of $37,000, to mature August 1, 1937, and to draw interest at the rate of 5 per cent. per annum, and said mortgage was filed on July 23, 1927. Thereafter Herbert Rhoades, guardian, paid to his ward, Fern F. Porter, such sums as were due her, and was discharged as her guardian.

Thereafter, it is alleged, the said Herbert Rhoades wrongfully and negligently accepted a second mortgage, pretended to secure the payment of $9,800, being the total sum due Mrs. Rothrock and Mrs. Shoup from their said guardian, said second mortgage being against the land involved herein, and being expressly subject to the prior mortgage thereon in the sum of $37,000 in favor of E. H. Lougee, Inc.

The cross-petition alleges that, in connection with the pretended investment of said wards' funds in the second mortgage of $9,800, the guardian made no application to the county court for and received no authority from said county court to cancel or release the note of $14,700, or the mortgage securing same, and said defendants and cross-petitioners now have a first lien on the premises for the payment of the balance of the principal sum of $9,800 with accrued interest.

It is alleged that no part of said $9,800, with interest thereon, except interest to August 1, 1935, has been paid to

the cross-petitioners, and that the guardian has not made his final settlement with them, and is still owing such amount to them, and has not been discharged as their guardian; that the mortgage of $14,700, given by Abraham L. Cull and wife to Herbert Rhoades, guardian, should be foreclosed and the interest of the plaintiff in said land and the proceeds thereof be declared junior and inferior to the rights of said cross-petitioners to the same; that an accounting be had of the amount due the said cross-petitioners as *cestui que trustents* from Herbert Rhoades, guardian, and the defendants, Abraham L. Cull and Christine L. Cull, Herbert Rhoades, guardian, E. H. Lougee, Inc., W. S. Newmyer, A. C. Holmquist and W. H. Harding, be adjudged to pay any deficiency which may remain after applying the proceeds of said sale to the payment of the amount due the cross-petitioners.

The plaintiff, for reply to the answer and cross-petition, denies that the mortgage held by Herbert Rhoades as guardian for Dorothy V. Porter Rothrock and Eloise E. Porter Shoup is a first mortgage lien, and alleges that said mortgage is subject, junior and inferior to the lien of the mortgage set out in plaintiff's amended and substituted petition.

Herbert Rhoades, guardian, filed special appearance, objecting to the jurisdiction of the court against him as guardian for the following reasons: (1) That the matters and claims set forth are brought as an original action, and not on appeal from the probate court for Burt county; (2) the matters and claims of said cross-petitioners are wholly matters, facts and claims over which the probate court has original jurisdiction, and over which the district court has appellate jurisdiction only; (3) all the matters, facts and claims set out in the cross-petition are now pending in the probate court on the final report and application of guardian for discharge and the objections thereto filed by said cross-petitioners. and in which proceedings the probate court has not yet entered any judgment or final order; (4) the district court is without jurisdiction to hear and determine the matters, facts and claims against the guardian as set out in said cross-petition.

The district court on December 19, 1938, sustained the special appearance, which was treated as a special demurrer, for the reason that said matters, facts and claims as set out in the cross-petition are within the exclusive original jurisdiction of the county court for Burt county, the same not being in the district court upon appeal.

The cross-petitioners present a number of errors relied upon for reversal. They insist that the court erred in not directing the foreclosure of the unpaid mortgage of $14,700, or the other mortgage in the sum of $9,800; that the court erred in granting the plaintiff a first lien against the real estate on the ground that the same was not supported by sufficient evidence; that the court erred in finding that Herbert Rhoades, guardian, had legally and validly released the $14,700 mortgage of his wards, and it is argued that the guardian had no legal right or authority to release the mortgage of $14,700 on July 21, 1927, by a marginal release, without first having applied formally to the county court for authority to make said release, and without the county court granting any authority therefor, and that such marginal release is null and void, and the mortgage of $14,700 remains in full force and effect.

In regard to the release of a mortgage by a guardian, Chancellor Kent, in deciding the case of *Field v. Schieffelin,* 7 Johns. Ch. \*150, 11 Am. Dec. 441, in New York in April, 1823, said: "Though it be not in the ordinary course of the guardian's administration to sell the personal property of his ward, yet he has the legal right to do it, for it is entirely under his control and management, and he is not obliged to apply to this court for direction in every particular case. It was said by Lord Hardwicke, in *Inwood v. Twyne,* Amb. 419, that he might change the nature of the infant's estate, under particular circumstances, and the court would support him in the act, if the court would have directed the change under the same circumstances."

The cross-appellants rely upon the case of *Federal Land Bank v. Tuma,* 116 Neb. 99, 216 N. W. 186, 56 A. L. R. 186, in which case Agnes Tuma was appointed guardian for her

minor children, and sought to secure a loan from the Federal Land Bank upon the homestead which had belonged to her husband in his lifetime. The loan was refused unless she acquired the entire fee in the land; thereupon she brought an action for partition and purchased the land from the referee for $30,000, and receipted for her one-third interest in the land, and also acknowledged receipt in favor of the retiring guardian of her children for $15,999.30. It was contended that the referee's deed to Mrs. Tuma was void because of the failure of the referee to collect the purchase price from the sale of the land, as Mrs. Tuma had paid nothing. This court said that the receipts did not represent money, but were a part of a scheme to change the record title of the interest of the heirs into a paper title in their mother, and that it was not a proper investment of the funds of the ward, nor was it authorized by the court. The court held that it should be voided for the best interests of the children, save as the rights of innocent purchasers are involved, and it held that, while preserving the rights of innocent purchasers, the court will "restore the wards as nearly as possible to the position they would have occupied had their guardians done their duty in preserving their interests."

We see nothing in this *Tuma* case which invalidates the release entered by the guardian in the case at bar. The abstract showed a release of the mortgage by a duly appointed and acting guardian, the named mortgagee. We see nothing in such a record to require the attorney examining such title to inquire into the state of the guardianship funds, and he has a right to assume that the guardian was acting in the interest of his wards. See *Federal Land Bank v. Worley,* 135 Neb. 493, 282 N. W. 476.

A purchaser who deals fairly with a guardian has a right to presume that the guardian acts for the benefit of his ward, and such purchaser is neither bound to inquire into the state of the trust, nor to be responsible for the guardian's faithful application of the trust money, unless the purchaser knew, or had sufficient information to put him on inquiry, that the guardian was practicing or contemplated a breach of his trust.

We have not been cited to any law in Nebraska which requires an order of court before a guardian can release a mortgage. The guardian's right to the custody and management of the ward's property implies the power to collect and receive moneys due the ward, and hence to receipt for the same, and, if secured by a mortgage, to discharge the mortgage, whether the money has become due or not. See *Mason v. Ackley*, 52 Okla. 157, 152 Pac. 846; Woerner, American Law of Guardianship, sec. 62.

The evidence shows that in 1923 Cull owned some 400 acres of land in Burt county, and made a mortgage of $35,000, which was given eventually to the New York Life Insurance Company, and a second mortgage of $14,700, with individual signers on the note, was given to Herbert Rhoades as guardian for three minors. Rhoades had been duly authorized to make such an investment of his wards' funds. Some four years later Cull, in securing a new and larger mortgage through the Metropolitan Life Insurance Company, secured a release by Rhoades as guardian on the margin of the record of the second mortgage of $14,700, so that the new mortgage to the Metropolitan Life Insurance Company might become a first mortgage, and when the new loan was closed Rhoades as guardian took a second mortgage for $9,800 for two of his wards, as the third one had become of age and was paid off in full.

After the two wards became of age they employed their own attorney, George Evens, to collect the defaulted interest on their mortgage, and $1,014 interest was collected and turned over by Herbert Rhoades, guardian, to attorney Evens. On February 26, 1936, Herbert Rhoades filed his petition in the county court for Burt county, setting out that the two wards had become of age, and he had been unable to collect more than the $1,014 of principal and interest, and prayed the court for an order directing him to surrender and release the original note and mortgage and accept a new note and mortgage from Abraham L. Cull for the balance due, the same to be subject to the first mortgage of $37,000, and there is attached thereto the waiver and consent of Mrs.

Rothrock, signed before a notary public in Umatilla county, Oregon, on February 21, 1936, and the waiver and consent of Mrs. Shoup, signed before a notary public in Hutchinson county, Texas, on February 22, 1936, in each of which they joined in the prayer of their said guardian asking that said order be entered, and these two women were on said date last given of full age, were both married, and had employed their own attorney.

We have carefully examined the original brief and the reply brief of the cross-petitioners, which briefs in their more than 200 pages present an exhaustive discussion of the law of the case, proceeding upon the assumption that the guardian has deliberately mishandled the affairs of his wards. It is claimed that the guardian has waived, abandoned and released without consideration the rights of the wards in their original second mortgage of $14,700, without authority of the county court, and that the district court should restore to the wards all of the rights they would have if the $14,700 mortgage had not been so released by the guardian conspiring and cooperating together with others to destroy the value of the same, and thereby defraud the minors. It is insisted that the $14,700 second mortgage investment was *in custodia legis* as trust fund, and is only subject to the orders of the county court until duly disposed of by the county court; that, as no sufficient consideration was received by the guardian, such release of said second mortgage was void.

Now, this court does not share a belief that the evidence supports such allegations and charges. From an examination of the evidence, one may as easily reach the conclusion that the guardian was duly authorized to invest the funds of his wards in the second mortgage, with additional signers, for $14,700, subject to a $35,000 first mortgage to the New York Life Insurance Company; that due to natural conditions of adversity, when interest became in default, and one of the wards had reached the time when a settlement must be made, the mortgagor found an opportunity to secure a slightly larger first mortgage of some $37,000 through the

Metropolitan Life Insurance Company, which could only be done by the release of the second mortgage of $14,700 by the guardian and his taking of a new second mortgage for a lesser amount, subject to the new first mortgage of the Metropolitan Life Insurance Company. This transaction was perfectly open and legitimate, and the customary method of handling such proceedings in such times. At the conclusion of the entire transaction, one of the wards had been paid off, and the position of the remaining wards was not materially altered, as they still had a second mortgage on all of the same real estate, and the mere fact that their investment in the second mortgage was subject to a first mortgage in a slightly larger amount does not give ground for charging that the transaction was an attempt to deceive and defraud the wards, or dissipate their property. Perhaps some better way of handling this situation might have been devised, yet considering all of the evidence we cannot see that the guardian can be charged with being derelict in his duty.

If the release by the guardian was unauthorized by the court, yet we cannot overlook the fact that each of the two wards, after becoming of age and employing an attorney, has received and retained the benefit of such transaction, with full knowledge of any irregularity therein and her rights in the premises. They will be presumed in law to have ratified the acts of their guardian. *Borcher v. McGuire*, 85 Neb. 646, 124 N. W. 111; Dame, Guardianship (3d ed.) 767, sec. 751.

In this opinion we have heretofore set out at length the rulings of the district court, and without repeating them at length we have reached the conclusion that the same were correct, and they are hereby affirmed.

AFFIRMED.