RHODD et ux. v. HEMBREE et al.

No. 30944.   Feb. 15, 1944.

Rehearing Denied April 25, 1944.

*147 P. 2d 994.*

Goode & Goode, of Shawnee, for plaintiffs in error.

G. C. Abernathy and Kenneth Abernathy, both of Shawnee, for defendants in error.

GIBSON, V.C.J.   This action was instituted in the district court of Pottawatomie county by Peter Rhodd and his wife against Hembree and Ewton, co-guardians of Una Hembree, an incompetent, and joining certain other parties as defendants, to quiet title to real property.

Issues were joined on the answer and cross-petition of said guardians seeking judgment on a promissory note and to foreclose the mortgage executed by plaintiffs to secure the same. Judgment was for defendant guardians, and plaintiffs appeal.

Plaintiffs alleged that the mortgage indebtedness had been fully paid and discharged.

The record shows that the note and mortgage in question were executed on March 9, 1931, to the State National Bank of Shawnee, for the principal sum of $1,700, due March 9, 1934.   In April, 1931, the note and mortgage were assigned to Tom C. Waldrep, guardian of the estate of Una Hembree, a minor. Thereafter plaintiffs made a number of payments on the indebtedness directly to Waldrep as guardian aforesaid.   The

payments so made reduced the indebtedness to $1,273.52 as of November 25, 1938. On that date, and while Waldrep was still the legal guardian of said ward, plaintiffs executed to him a renewal note for the balance then owing, together with a mortgage to secure the same. The new note and mortgage failed to designate Waldrep as guardian. He appeared as payee and mortgagee therein merely as "Tom C. Waldrep."

Waldrep wrote on the new note the following notation: "Secured by mortgage dated March 9, 1931, recorded Mch 23-31 in Book 99 page 637, and by mortgage dated Nov. 25, 1938." And on the face of the old note he wrote the following: "Paid by new note this 25 of Nov. 1938. Tom Waldrep."

The old note-was delivered to plaintiffs, but Waldrep failed to release the old mortgage.

Waldrep procured no order from the county court authorizing or approving the renewal transaction.

On December 13, 1938, Waldrep in his individual capacity assigned the new note and mortgage to the Federal National Bank of Shawnee to secure his personal indebtedness. This transaction was not authorized by the county court.

Subsequently, plaintiffs paid to said bank all the indebtedness evidenced by the new note, and received a release of the new mortgage.

The trial court held that the old mortgage was valid and subsisting, and rendered judgment on the old note and decreed foreclosure of said mortgage.

Plaintiffs' theory is that both mortgages secured the same debt, and that the new note represented that debt; that the assignment of the new note to the bank carried with it not only the new mortgage but the old as well, and that the payment of the indebtedness to the bank served to discharge the old mortgage as well as the new.

Defendants say that the new note and mortgage, accepted by Waldrep without order of the county court, were voidable, and that the assignment thereof without order of court was voidable as between the ward and plaintiffs, leaving the original note and mortgage outstanding. It is said that plaintiffs knew they were dealing with Waldrep as guardian, and that they were charged with knowledge of the limitations of his powers. Plaintiffs were charged with knowledge, say defendants, that the assignment to the bank was not authorized by order of court and was therefore voidable as between the ward and the plaintiffs.

The execution of a new note and mortgage to a guardian in payment of a former note and mortgage without order of court probably constitutes a voidable transaction as between the guardian and ward, for it has been held that the authority of a guardian in dealing with negotiable paper belonging to his ward, in the absence of court order, is limited to obtaining the full amount in money represented by such instruments. Crume v. Rivers, 178 Okla. 363, 61 P. 2d 862.

But plaintiffs make no contention that the old mortgage indebtedness was discharged by the new note and mortgage. In fact the new note states on its face that it was given to secure the old mortgage debt. They say that the assignment of the new note to the bank carried with it the old mortgage which it was given to secure, and that the payment of the note to the bank discharged the old mortgage. Phillips v. Roper, 171 Okla. 225, 42 P. 2d 871.

In view of the latter case, plaintiffs are correct in their statement that the assignment of a note carries with it the mortgage security. Therefore, if the assignment of the new note to the bank passed the legal title thereto, it also passed to the bank the old mortgage and payment of the note in good faith would discharge the lien of the mortgage.

We stated above that the transaction involving the execution of the new note and mortgage may have been voidable as between the guardian and ward for

174

failure of court order approving the same. We say, however, that it was neither void nor voidable as to the plaintiffs. A guardian is not without power to accept a new note from the debtor in lieu of an old one as evidence of the same indebtedness; and such transactions made in good faith are valid so far as the maker of the note is concerned. The only condition is that the guardian, in order to protect himself and his surety from responsibility for any resulting loss, must obtain an order of court sanctioning or approving the transaction. The maker of the note is not a necessary party to the proceeding for approval, and is not obliged to concern himself with that matter. There is nothing in our statutes to the contrary.

Nor is the rule announced in Crume v. Rivers, supra, contrary to our statement, above. A guardian may accept something other than money in full in discharge of a negotiable instrument, but if he would protect himself from loss that might thereby result, he must obtain the court's approval of the transaction.

It is true that the new note named Waldrep, and not Waldrep, guardian, as payee. But the parties knew that the note was part of a guardianship transaction. The designation of Waldrep as payee without indicating his fiduciary status was of no material consequence since plaintiffs acted in good faith. They had a right to assume that Waldrep would be faithful to his trust and apply the note to the benefit of his ward as the law requires. Legal title to the note was in Waldrep; the beneficial title in his ward. This is true even if Waldrep had been designated as guardian in the note. Bank of Welch v. Cabell, 52 Okla. 190, 152 P. 844. There the court stated the rule as follows:

"The legal title to a promissory note, made payable to the order of a designated person, is in the payee named, although he is designated as guardian in the face of the note, and as both the legal title and right to sue are in the payee as guardian, he may assign it, and his assignee has the right to sue on the note."

See, also, 8 C. J. 174, sec. 295, and authorities there cited; Howell v. Flora, 155 Kan. 640, 127 P. 2d 721.

So far as plaintiffs were concerned, the new note represented the evidence of their indebtedness to the ward's estate. When they found it in the hands of the bank under legal endorsement of Waldrep, they were entitled to assume that the assignment was in all respects regular, and properly sanctioned by the court.

Parties dealing with a guardian may be charged with knowledge of the limitations upon his powers, as defendants suggest, but that rule applies to limitations provided by statute. The statutes do not prohibit guardians from accepting new evidence of indebtedness for old without court approval. All such acts are subject merely to the management and control of the probate court. 58 O. S. 1941 § 811. And that management and control pertain wholly to the official relations between the court and its officer, the guardian.

We do not mean to say that an attempted release of an indebtedness for less than the amount due would not be voidable as against the debtor. But, the acceptance of a new note without impairment of the indebtedness and security; and full payment thereof by the debtor to the guardian is not voidable for failure of court approval as against the debtor. And so, payment of the indebtedness in good faith to one holding the evidence thereof by actual assignment from the guardian without court approval is not voidable as to the debtor. In such case the guardian passes legal title to the assignee (Bank of Welch v. Cabell, supra), and the debtor is under no legal obligation to ascertain whether the assignment was approved by the court.

Here, the bank could have maintained an action on the note against plaintiffs, and plaintiffs could not have questioned Waldrep's authority as guardian to make the assignment. Bank v. Cabell, supra.

Therefore, payment in good faith to the bank discharged the debt. To hold that plaintiffs must again pay the debt in the face of the fact that the debt was paid in full to the ward's guardian or his legal assignee, would be to extend to the ward an extraordinary protection not contemplated by law. A debtor is under no legal obligation to see that a guardian does not misappropriate the proceeds of the indebtedness when it is paid or the securities representing such debt.

We make no statement here concerning the rights and remedies the ward may have against the assignee in such case. That matter is not involved in this case.

The judgment of the trial court is reversed and the cause remanded with directions to enter judgment for plaintiffs canceling the mortgage.

CORN, C.J., and OSBORN, WELCH, and DAVISON, JJ., concur. RILEY, BAYLESS, HURST, and ARNOLD, JJ., dissent.

---

HURST, J. (dissenting). I think the majority opinion reaches the wrong conclusion and is unsound in two respects.

1. It adheres to the view that a guardian who holds a secured promissory note payable to "Tom C. Waldrep, Guardian of Una Hembree, a minor," may accept in full satisfaction thereof a renewal note made payable to "Tom C. Waldrep" only. This holding is contrary to our previous decisions that a guardian, in the absence of authorization by the court, is without authority to accept anything other than the full amount, in cash, owing thereon in satisfaction of a promissory note due the ward. Mason v. Ackley, 52 Okla. 157, 152 P. 846; Mason v. Evans, 52 Okla. 484, 153 P. 133; Crume v. Rivers, 178 Okla. 363, 61 P. 2d 862. It is also contrary to 58 O. S. 1941 § 804, which provides that the guardian must "receive all debts due him (the ward), or may, with the approbation of the county judge, compound for the same and give discharges to the debtors on receiving a fair and just dividend of his estate and effects." The majority opinion evades the force of this statute and the former decisions of this court by holding that "a guardian may accept something other than money in full discharge of a negotiable instrument, but if he would protect himself from loss that might thereby result, he must obtain the court's approval of the transaction."

I do not agree with the majority that the only purpose or effect of 58 O. S. 1941 § 804 is to provide a method whereby the guardian may, if he so desires, protect himself from liability on his bond. I think the statute was enacted primarily for the protection of the ward, that it prescribes a limitation upon the *power* of the guardian to compromise claims against the ward's estate, and that a guardian's settlement of a claim against the ward's estate for anything other than the full amount due, in cash, in the absence of court approval, is voidable as against the ward. The majority opinion cites no authority for its holding and is contrary to the general rule that statutes, such as ours, providing that the guardian may compound claims "with the approbation of the court" are mandatory, limit the common-law powers of the guardian, and make compromises not approved by the court subject to avoidance by the ward. 25 Am. Jur. 68, § 106; 12 R. C. L. 1130, 1131; 28 C. J. 1124, note 54; Ross, vol. 2, Probate Law and Practice § 670; Hayes v. Mass. Mut. Life Ins. Co., 125 Ill. 626, 18 N. E. 322, 1 L. R. A. 303; Bunnell v. Bunnell, 111 Ky. 566, 64 S. W. 420; Jennings v. Jennings, 104 Cal. 150, 37 P. 794; Martin v. Ornelas, 139 Cal. 41, 72 P. 440. In the Hayes Case the Illinois court held that the statute was enacted as "an additional safeguard" to the ward, and permitted the wards to disaffirm the attempted compromise. And in the Bunnell Case the Kentucky court said that "not having the approbation of the court, the attempted compromise by the guardian was void."

I think, therefore, that a guardian,

unless he has obtained the approval of the county court, is simply without power to accept anything other than the full amount, in cash, due thereon in payment of a promissory note belonging to his ward, and that if he does so, the ward may avoid the transaction as against the maker.

If the guardian may, without court approval, bind the ward by accepting a note made payable to himself individually in satisfaction of a debt due the ward's estate, why may he not, with like effect, accept any other item of property, real or personal, in satisfaction of the debt? It seems that under the majority opinion he may now do so, and in my opinion the principal purpose of section 804, that of limiting the *power* of a guardian to compromise claims against his ward's estate without court approval, is thus destroyed.

2. The opinion also holds that a guardian holding such a note in his ward's estate, may, without approval of the county court, and without obtaining anything of value for his ward, assign the note to a bank to secure or satisfy his personal indebtedness, and thereby vest legal title to the note in the bank so that the maker, by paying the bank, will satisfy his debt to the ward. I do not agree. The authorities upon which the opinion seems to rely, Bank of Welch v. Cabell, 52 Okla. 190, 152 P. 844; 8 C. J. 174, and Howell v. Flora, 155 Kan. 640, 127 P. 2d 721, do not support its conclusion.

In the Cabell Case the guardian had assigned the note without the approval of the county court but had received the full amount due thereon in cash. The maker, when sued by a subsequent assignee, defended on the ground that the guardian's assignment, having been made without authority, was void, but the court held that the assignment, having been made for the full amount of money due thereon, was good. The case turned on the point that the guardian had received the full amount of cash due on the note and was thus within an exception to the general rule. It is not authority for the proposition that a guardian may, without court approval, transfer good title to his ward's note by assigning it as security for, or in satisfaction of, a debt owed by the guardian personally to the assignee, as in the case at bar. It is true that the case states that legal title to such a note is in the guardian and cites cases from Mississippi and Arkansas in support of such statement. The statement, however, is dictum, and the cited cases do not support it.

In the Mississippi case the note was made payable to "E. P. Richards, guardian of James Jones." Richards died and the executor of his will endorsed the note to a third party, who endorsed it to Jenkins. The maker, when sued, defended on the ground that Jenkins could not maintain the suit. The Mississippi statute provided: "The assignee of any chose in action may sue for and recover in his own name if the assignment be in writing." The court said that "this statute settles this question," and held that Jenkins could maintain the suit. Would this court hold that if Waldrep had died his personal representative could have assigned the note and passed good title? I think not. The Arkansas case is based on the common-law rule that a guardian, unless restrained from doing so by statute, has the power to sell his ward's personal property without an order of court. 108 A. L. R. 936 at 937, note.

Furthermore there is serious doubt as to whether the rule stated in the Cabell Case now obtains in Oklahoma. In at least three later decisions we have held that "the legal as well as the beneficial title to personal as well as real property remains in the ward, and the power of the guardian is a naked trust not coupled with an interest." Title Guaranty & Surety Co. v. Cowen, 71 Okla. 299 at 302, 177 P. 563; Winona Oil Co. v. Barnes, 83 Okla. 248, 200 P. 981; Ischomer v. Fryer, 105 Okla. 30, 231 P. 298.

Our Probate Code came indirectly from California, and prior to its adoption in this state the California court

had held that a guardian is without power to sell the personal property of his ward without an order of court and that such an attempted sale "conveyed no title to the purchaser." Kendall v. Miller, 9 Cal. 592. It had applied this rule to intangible personal property (shares of corporate stock) and allowed recovery from a purchaser thereof, even though he had purchased the same in good faith. La Montagnie v. Union Ins. Co., 42 Cal. 290. In that case the court said that "the plain intent of the statute is to make void every alienation of the property of the ward, if made by the guardian without the order of the court."

In Gentry v. Bearss (1908) 82 Neb. 787, 118 N. W. 1077, where the guardian, without authorization of the court, had sold a note and mortgage made payable to himself as guardian, the Nebraska court, relying on the above cited California decisions in the absence of an Oklahoma decision on the question, held that under the Oklahoma Probate Code the "attempted sale was void and the title to the note and mortgage did not pass to Scott" (the purchaser).

In the case of Garrett v. Reid-Cashion Land & Cattle Co., 34 Ariz. 245, 270 P. 1044, under a Probate Code substantially the same as ours, the Arizona court held that a guardian's exchange of his ward's personal property (corporate stock for other corporate stock) without "obtaining an order therefor" was void and not binding on the minor. Our statute (58 O. S. 1941 § 822) reads verbatim with the quoted portion of the Arizona statute.

In Bohanan v. Riddle, 145 Okla. 301, 293 P. 1031, relied upon by defendants in error but not cited in the majority opinion, this court held that the transfer of a promissory note in exchange for other property, with approval of the county court, but without complying with the statutory procedure, was without authority of law and void. This case refers to several sections of our Probate Code and is in harmony with the decisions from California, Arizona,

and Nebraska, above cited, but does not refer to Bank of Welch v. Cabell, above. That the annotator of the note in 108 A. L. R. at page 943 considers the Bohanan Case to be contrary to the Cabell Case seems clear from the language used. See, also, 28 C. J. 1135, note 94.

The Bohanan Case and the cases from California, Nebraska, and Arizona hold, in effect, that statutes providing a method of procedure for guardianship sales abrogate the common-law rule that a guardian may dispose of his ward's personal property without court approval, are mandatory, and that compliance with such provisions is a prerequisite to the power of the guardian to transfer title to his ward's personalty, including promissory notes. I think these decisions are correct. The sections of the statute (58 O.S. 1941 §§ 821-850) are intended to have this effect. It will be noticed the sections relating to guardianship sales (sections 821, 822, and 826) specifically apply to personal property as well as real estate, having been given this effect by the revision of 1910. And the various provisions of our Probate Code, including § 833, provide a complete method of procedure to be followed in conducting guardianship sales, including the petition, notice, confirmation, etc. If it was not intended that the guardian must comply with said sections in disposing of his ward's personalty, it seems useless to have so carefully outlined the procedure therefor. For a collection of other cases on the question, see 108 A. L. R. 941, note.

The text in 8 C. J. 174, relied on in the majority opinion, is based on cases having to do with the right to maintain a suit on a note made payable to one in a representative capacity, or on cases governed by statutes differing from ours, or on cases following the common-law rule that a guardian may transfer title to the personal property of his ward without court approval. The Flora Case, above, relied on in the majority opinion, is not a guardianship case, but simply holds that a trustee in whose name a note is held for the benefit of others may maintain a suit thereon in

his own name. These authorities do not support the conclusion reached by the majority. Undoubtedly Waldrep could have maintained a suit on the note and mortgage in his own name as guardian. But it does not follow that he could transfer the note to a third party without the approval of the county court. As I have shown, a transfer for anything other than cash in such a case is voidable so far as the ward is concerned.

Rhodd is responsible for the position in which he finds himself. It was his negligence in giving a renewal note made to Waldrep personally that enabled Waldrep to assign the note to the bank as security for his personal indebtedness. Rhodd knew that the original note and mortgage were held in the name of Waldrep as guardian and he was bound to know the duties and powers of the guardian in dealing with them. 28 C. J. 1123, § 204. If the second note was negotiated and he was thus placed in a position, because of the law of negotiable instruments, of having to pay it to the bank (a question not before us and on which I intimate no opinion), this did not relieve him of liability to the ward. The ward should not suffer because of his negligent act.

The majority opinion sets a dangerous precedent, and lets down the bars for faithless guardians to traffic with their wards' estates to the advantage of the guardians and the detriment of the wards. It is not enough to say, as the majority opinion intimates, that the ward will be protected by going against the guardian and the sureties on his bond. The bond is sometimes insufficient.

Furthermore the ward is entitled to all the protection the law gives him. He is entitled to the protection of the law forbidding the sale of his property without court approval, and he is entitled to the protection of the bond. Those under guardianship are favorites of the law, and the courts should be, and usually are, careful to see that they are not imposed upon.

For these reasons I respectfully dissent.

RILEY, BAYLESS, and ARNOLD, JJ., concur in this dissent.