No. 34,820

M. E. McCarthy and W. A. McCarthy, doing business as The McCarthy Hardware Company, *Appellants*, v. Wilbur Sink et al., *Appellees*.

(107 P. 2d 790)

Opinion filed December 7, 1940.

*Manford Holly*, of Mankato, *Charles A. Walsh*, of Concordia, and *D. M. McCarthy*, of Hays, for the appellants.

*A. Teeple* and *George E. Teeple*, both of Mankato, for the appellees.

The opinion of the court was delivered by

THIELE, J.: On October 16, 1937, plaintiffs commenced an action to recover on a promissory note signed by each of the four defendants, dated June 1, 1932, due December 1, 1932, for the principal amount of $4,190. Defendants filed a very long answer made up of ten divisions, which we summarize:

(1) Admits execution of the note and denies liability.

(2) The defendants, except Wilbur Sink, allege they are sureties, and they signed the note on Wilbur Sink's representation he was indebted to plaintiffs; that Wilbur Sink was not so indebted and there was no consideration for the note.

(3) That in June, 1919, Wilbur Sink purchased from plaintiffs a motor-cultivator manufactured by Avery Company and in consideration gave plaintiffs his note dated June 23, 1919, for $850; that the machine was unsatisfactory, etc., and on September 25, 1920, the

dispute between plaintiffs and Wilbur Sink was adjusted and compromised; that Wilbur Sink met with plaintiffs and representatives of the Avery Company and plaintiffs induced Wilbur Sink to sign and execute an order for another machine upon his returning the first machine purchased and paying $100. A copy of that contract was attached, and will be referred to later; that it was the intention of the parties to settle all disputes resulting from breach of warranty of the first machine; that when tried, the second machine proved defective and Wilbur Sink told plaintiffs he wanted to return the machine and rescind his contract; that plaintiffs stated they would get in touch with the Avery Company and see that the matter was adjusted; that plaintiffs had the note for the first tractor and if the machine could not be made to work, they would give credit for the original purchase price and the $100 paid on the exchange and Wilbur Sink would not be required to pay unless the whole matter was adjusted to his satisfaction.

(4) That plaintiffs were authorized dealers and agents of Avery Company.

(5) That on September 25, 1920, and prior to the signing of the contract for the second machine, Wilbur Sink expressed a doubt the second machine would be any better than the first; that plaintiffs stated to him he had not only the guarantee of the Avery Company but of the plaintiffs, and that if Wilbur Sink would sign the order if the machine did not perform as represented, plaintiffs would see that he was not called on to pay the original purchase price and that he would be given credit upon the note for the first machine and all interest he had paid and the $100 difference he had paid as well as for parts used on the first machine; that such representations were oral, he relied upon them and signed the order to the Avery Company; that later he tried the machine and it would not perform, he tendered return and was induced to keep it upon the promises and representations previously set out.

(6) That thereafter and on numerous occasions he offered to return the machine and on each occasion he was told to keep it, and if a satisfactory adjustment was not made by Avery Company plaintiffs would adjust the matter by credits in the manner heretofore mentioned, and Wilbur Sink would never be required to pay anything.

(7) That in October, 1919, Wilbur Sink was indebted to plaintiffs on three notes in no way connected with the motor-cultivator mat-

ter; that on October 7, 1919, the whole indebtedness, including the first motor-cultivator note, was accumulated in one note for $6,-066.86; that at that time it was represented to Wilbur Sink an adjustment would be made on the motor-cultivator; that on January 10, 1920, Wilbur Sink made payment of principal and interest and executed a new note for a balance of $4,500; that on January 15, 1921, the indebtedness and interest amounted to $4,936.58 and a new note was given for that amount; that on September 10, 1921, and after the second machine was delivered and an attempt made to use it, he made a payment of part of the interest and executed a new note for $5,000; that at the time of the execution of this last note Wilbur Sink offered to return the machine and sought credit for it and the $100 paid and plaintiffs told him to keep the machine; that they were trying to get an adjustment from Avery Company and that he would not have to pay the original purchase price, etc., and relying thereon, he executed the $5,000 note; that on June 10, 1922, he paid interest on the $5,000 note and on August 9, 1922, he paid $1,000 on the note, leaving an apparent amount due of $4,000; that at that date he protested against payment of interest and was told plaintiffs were attempting to get an adjustment from the Avery Company, and that the matter would be adjusted; that on June 25, 1924, he was induced by similar representations to sign a note for $4,355.11; that on April 22, 1924, he gave a note for $4,429; that on October 6, 1924, he paid interest and principal and executed a new note for $2,643, as the result of similar representations.

(8) That during the month of June, 1920, plaintiff held his note for $4,500 and he paid thereon the sum of $1,000, for which he was not given credit and that he did not discover such failure until after plaintiffs commenced this action; that had proper credit been given for the payment of $1,000, the amount due and owing on October 6, 1924, after the payment of the $2,000, would have been considerably less than the purchase price of the first motor-cultivator, the cost of parts, interest thereon, plus the sum of $100 paid on the exchange, and that after payment of the $2,000 on September 6, 1924, he was not indebted to plaintiffs in any amount.

(9) That Wilbur Sink executed several renewals of the purported indebtedness under the mistaken belief he was indebted to plaintiffs in some amount, and that the renewal notes were wholly without consideration; that all of the renewal notes were made under mutual mistake of fact, all parties believing there was some amount due

plaintiffs over and above the original purchase price, plus the sum of $100, and that each renewal after September 6, 1924, was on the express condition Wilbur Sink would be allowed credit for the purchase price of the first machine, plus cost of parts, plus the $100.

(10) That the note sued on represents the amount of $2,643, being the indebtedness apparently due October 6, 1924, together with accrued interest; that the renewal notes were wholly without consideration and were executed by all of the defendants under the mistaken belief there was some amount due to plaintiffs. The prayer of the answer was that the plaintiffs take nothing and that defendants go hence without day.

The contract or order referred to in the answer was dated September 25, 1920, was signed by Wilbur Sink, and directed Avery Company to ship him a described motor-cultivator, in consideration of which he was to pay the company $100 and deliver a described cultivator to Mankato, Kan. It was provided no dealer or representative of the Avery Company was authorized to change the warranty. The warranty on the motor-cultivator was that it was well made, of good material, and any piece or part that proved defective within thirty days would be made good. Under head of representations, pulling power of tractors was specified, and it was provided that if within six days from the first starting the purchaser was not satisfied that the tractor could be made to operate and do the work, the purchaser agreed to notify the company by registered mail or telegram addressed to the company at Peoria, Ill., etc., as provided, and that failure to give such notice should be a waiver by the purchaser of all right under the representations, and use of the machinery after six days, etc., should be deemed proof that the same was in all respects as represented.

The plaintiffs' reply was a denial of new matter, and allegations that defendants were barred, estopped and precluded by ratification, novation, waiver, acquiescence, estoppel and laches from questioning the note sued on or the indebtedness represented by it, and that the several oral agreements and claims of damage exhibited in the amended answer were barred by the statute of limitations.

At the beginning of the trial, the plaintiffs filed a motion to compel defendants to elect whether they relied on the oral promise alleged in part 3 of their answer, or on the oral promise alleged in part 5, or on the oral promise alleged in part 6, or on oral promises in other parts, and whether they relied on rescission or breach of warranty. The motion was denied.

At the trial, defendants had the burden of proof. Their evidence started with the purchase of the first motor-cultivator in 1919 from the Avery Company, under written contract, and that the consideration for the purchase was a note of $850, payable to the plaintiffs; that an exchange of machines was made in September, 1920, between the Avery Company and defendant Wilbur Sink, under the written contract referred to in the answer, the $100 difference being paid directly to Avery Company. There was also testimony as to the oral obligation assumed by plaintiffs, in connection with the exchange. Plaintiffs denied much of this testimony, but the dispute was resolved by answers returned by the jury to special questions, and we need not set out the testimony here. It may be remarked here that the second motor-cultivator transaction occurred at a different date than when any note transaction, as hereafter detailed, took place. Defendants' evidence also showed that prior to the first motor-cultivator transaction, Wilbur Sink and his mother, Jennie Sink, were indebted to plaintiffs in a large amount. On October 7, 1919, all of this indebtedness and the motor-cultivator note of $850 were merged in a note for $6,066.85. Payments were made on this note and on January 10, 1920, a new note for $4,500 was given by Wilbur Sink and Jennie Sink. It is the credits or lack of credits on this note which forms the basis for defendants' claim that Wilbur Sink made payment of $1,000 for which he received no credit. The note was in evidence and bears the following endorsement on its back, viz.: "Recd 6/29/20 check, $616.69. Recd 6/29/20 Inst in full to this date." Across its face was the following: "Paid 1/17/1921."

It was shown that about the last date the note was delivered to Wilbur Sink, who kept it for a time, then gave it to his mother, the joint-maker, and Wilbur Sink stated he didn't see it again "until this trial came up," when he discovered he didn't get credit for $1,000 which he had paid. There is some confusion as to exact dates, but his explanation was that on June 10, 1920, he gave plaintiffs his two checks for $800 and for $27.75, and out of the same interest on the $4,500 note was deducted, the balance of $616.69 being credited on the principal; that on June 29, 1920, he paid $1,000 and directed it be applied on the note; that the $1,000 was made up of two checks of $500 each delivered to him by other parties and by him endorsed and delivered to plaintiffs, and that he had been given no credit therefor. Plaintiff's evidence admitted receipt of the various checks, but explained their application to other debts and

on the note in a manner different from defendants' claim. We need not review that evidence. Defendants' evidence further showed that in January, 1921, the $4,500 note, showing endorsements as above mentioned, was delivered to him, at which time a new note was given, the consideration being $4,936.58, made up of the balance due on the $4,500 note, plus a book account of $883.10; that thereafter the note was renewed from time to time, always on the promise of plaintiffs to give him credit for the motor-cultivator. From the abstracts we learn that Jennie Sink, one of the makers of the $4,500 note, is dead. It is not disclosed just what other notes she signed nor the date of her death. There is no dispute that on June 20, 1930, the indebtedness evidenced by the then extant note was divided and represented in three notes of $3,000, $300 and $326, and that it was at that time that the defendants other than Wilbur Sink first signed the notes; the notes were afterwards merged in one note, the last one signed being that one on which suit was brought. Neither is there any dispute that payments of principal and interest made from time to time were not properly credited, except as to the items specifically mentioned above.

After both sides had rested, plaintiffs moved the court to withdraw from the consideration of the jury all issues concerning the motor-cultivator sale, assigning among other reasons that the defendants' evidence showed only an oral guaranty by plaintiffs to defendant Wilbur Sink which was unenforceable because of the statute of frauds, and to withdraw the matter of the $1,000 payment on the $4,500 note for the reason the defendant Wilbur Sink was precluded by his laches. This motion was denied, as was plaintiffs' request for instructions to the jury.

The court submitted the matter to the jury under voluminous instructions which need not be reviewed. The jury returned a general verdict:

"We, the jury, empaneled and sworn in the above-entitled case, do upon our oaths find for the defendants, Wilbur Sink, Emit Sink, John Sink and Bert Sink. (That at the time of October 6, 1924, the defendants owed the plaintiffs nothing.)"

Originally, the court submitted eleven special questions. When the verdict and answers were returned, plaintiffs requested a direct answer to question 1. The court then submitted what appears as question 12. A similar motion was made to its answer and the court thereupon submitted what appears as question 13. We omit

all reference to objections as to form of questions, etc. As finally received, the special questions and answers were:

"1. Who sold the motor-cultivator to Wilbur Sink on September 25, 1920? A. The motor-cultivator placed with Wilbur Sink on September 25, 1920, was the adjustment asked for Wilbur Sink by the McCarthy Hardware Company with the first motor-cultivator and $100 as a consideration.

"2. Did the Avery Company warrant this machine to Wilbur Sink? A. Yes.

"3. Was the machine sold to Wilbur Sink on September 25, 1920, warranted by McCarthy Hardware Company? A. The machine placed with Wilbur Sink on September 25, 1920, was warranted by the McCarthy Hardware Company.

"4. If you answer Question No. 3 'Yes,' then state fully: (a) The terms of the warranty. A. The plaintiffs warranted the motor-cultivator to Wilbur Sink to perform the work it was designated to do. If it failed in any respect, the plaintiffs would credit all money and interest involved if the Avery Company did not. (b) What was the consideration, if any, for Wilbur Sink signing such contract? A. The consideration that induced Wilbur Sink to sign said contract was the oral warranty of the McCarthy Hardware Company.

"5. Was the $1,000 paid plaintiffs by Wilbur Sink in June, 1920, applied by plaintiffs as follows: To the principal of his $4,500 note, $616.69; to interest thereon in the sum of $198.50; and to his book account in the sum of $184.81? A. No.

"6. Did the Hardware Company orally promise Wilbur Sink on September 25, 1920, that it would make the second motor-cultivator good? A. Yes.

"7. If you answer Question No. 6, 'Yes,' then state whether such promise was made before or after Wilbur Sink signed the written order for the second motor-cultivator. A. Before.

"8. If you answer Question No. 6, 'Yes,' then state fully what was the consideration for such oral promise. A. The consideration given for such oral promise was the signing of the order for the second motor-cultivator by Wilbur Sink in acceptance of the adjustment offered by the Avery Company, which adjustment was asked for by the McCarthy Hardware Company.

"9. Do you find that at the time Wilbur Sink gave the three notes to the Hardware Company in 1930, he did so upon the promise that the Hardware Company would make an adjustment of his indebtedness? A. Yes.

"10. Did Wilbur Sink before he signed the order to the Avery Company on September 25, 1920, tell M. E. McCarthy that he could not see any difference between the second motor-cultivator except that it was a little narrower in width and that he did not think it would do his work, or words to that effect? A. Yes.

"11. Were the three notes, defendants' exhibits 10 A, B and C, given to George Brosius, a collector of The McCarthy Hardware Company? A. No.

"12. Who sold the motor-cultivator to Wilbur Sink on September 25, 1920? This question refers to the Avery Company and the The McCarthy Hardware Company. A. The motor-cultivator sold to Wilbur Sink on September 25, 1920, was the adjustment asked of the Avery Company for Wilbur Sink by the McCarthy Hardware Company with the first motor-cultivator and $100 as a consideration.

"13. Who made the cultivator deal with Wilbur Sink on September 25, 1920? A. The McCarthy Hardware Company, the Avery agent."

In due time the plaintiffs filed motions to set aside answers to special questions, to set aside the verdict and for judgment for plaintiffs and for a new trial. These various motions were denied and plaintiffs appeal, specifying error in many particulars.

In a preliminary way, it may be said that execution of the note sued on is admitted and that there is no dispute it represents the last of a series of notes covering an indebtedness made up of many items other than for the motor-cultivator purchased in September, 1920. The defense to the note is two-fold, that a certain payment of $1,000 claimed to have been made in June, 1920, was not credited on the then current note of $4,500, and that by reason of certain agreements claimed to have been made in connection with the purchase of a motor-cultivator in September, 1920, there was no liability for a part of the note, and by reason of both there was no consideration for the current note of $2,643 made October 6, 1924, nor for any note subsequently made.

We shall first consider the contention of the appellants the trial court erred in not withdrawing from the consideration of the jury all issues concerning the $1,000 payment alleged to have been made by Wilbur Sink and not credited on the then current note, our attention being confined solely to the testimony of the defendants. On January 10, 1920, Wilbur Sink and Jennie Sink delivered to plaintiffs their note for $4,500. On June 10, 1920, Wilbur Sink testified he delivered to plaintiffs two checks for $800 and $27.75 out of which interest was paid, the balance of $616.69 being credited on the note, and that on June 29, 1920, he paid by delivering to plaintiffs two checks for the further sum of $1,000 for which he received no credit. Assuming correctness of this, the following January he owed principal of $2,883.31, plus not to exceed six months' interest at ten percent, amounting to $144.16, or a total of $3,027.47. Under date of January 15, 1921, he gave a new note to plaintiffs for $4,936.58, the consideration of which he states was the balance due on the old note, plus a book account of $883.10. The total of these last two items was $3,910.57, or over $1,000 less than the new note. At the time the new note was given, the old note bearing the endorsement of interest paid to June 29, 1920, and the credit of $616.69 and of no other amount, and marked across its face "Paid 1/17/1921," was returned to him. He made no con-

tention he protested to anyone that he did not have a proper credit. He took the note, kept it awhile and then gave it to Jennie Sink, the co-maker, and only discovered that he did not have credit after the present action was filed in October, 1937. In the meantime Jennie Sink had died. We are not now concerned with plaintiffs' explanation, nor need we speculate why Wilbur Sink did not know in January, 1921, that he was giving a new note for over $1,000 more than he now claims was due. It is clear, however, that he participated in a settlement and adjustment of his and Jennie Sink's indebtedness at that time, and that he did not then, nor for many years thereafter, raise any question as to the correctness of the accounting on the $4,500 note of January 10, 1920. It might well be said that in legal effect the transaction amounted to an account stated, and any relief is now barred by the statute of limitations. (See *Kansas City Title & Trust Co. v. Fourth Nat'l Bank*, 135 Kan 414, 10 P. 2d 896.) There is, however, a more compelling reason why Wilbur Sink may not now question the transaction. In January, 1921, when the balance due was calculated, and when he knew equally with the payees what was due, he executed the new note and received back the old note with the one endorsement. He kept the note awhile and then gave it to his co-maker, Jennie Sink. She made no protest. She has since died, and when the instant action was tried, there was no possibility of getting her version of the transaction or of fixing any liability on her or her estate. By reason of failure of defendant to make a timely assertion, plaintiffs' position has changed. Wilbur Sink waited too long and is now estopped to question the matter. (See 1 C. J. 712 *et seq.* [Accounts and Accounting, §§ 342, 347, 359]; 1 C. J. S. 731 [Account Stated, § 51, e].) Wilbur Sink's own testimony disclosed a situation where only a question of law was involved and the matter should not have been submitted to the jury.

We next consider the matter of that part of the indebtedness evidenced by the note said to have arisen out of the purchase of a motor-cultivator. It is conceded by all parties that Wilbur Sink purchased a machine from the Avery Company in June, 1919, and that to pay for it he gave his note to plaintiffs for $850 and that note was later merged in the larger note of $6,066.85 and succeeding renewals thereof. It is admitted by Wilbur Sink that in September, 1920, he settled all matters of controversy respecting the first motor-cultivator and whether it was as represented by his entering into

a written contract with the Avery Company as has been more fully set out earlier herein. The point of controversy turned on what obligations were assumed by plaintiffs when the above written contract was executed. There was some inconsistency in Sink's various claims, but all of them were denied or disputed by the plaintiffs. It is not necessary that the evidence be reviewed, for the various conflicts were resolved by the jury in its answers to the special questions. It now appears from answers to questions 1, 12 and 13 that the written contract of September 25, 1920, was made between Avery Company and Sink as the result of a request of plaintiffs that the first motor-cultivator transaction be adjusted, and that plaintiffs were agents for the Avery Company; by answer 2, that the Avery Company warranted the machine to Sink; by answer 3, that the machine sold under that contract was warranted by plaintiffs; and by answer 4, that the warranty was that the machine would perform the work it was designed to do and if it failed the plaintiffs would give Sink certain credits if the Avery Company did not. By other answers it appears plaintiffs' warranties were oral. The sum and substance of these answers is that plaintiffs agreed to perform if the Avery Company did not, and generally speaking was a contract that to be enforceable must have been in writing under the statute of frauds (G. S. 1935, 33-106). There is some testimony which warranted application of the rule that such a promise is not within the statute where it appears the main purpose and object of the promisor was not to answer for the debt of another, but to subserve some purpose of his own. (See *Allen v. Turner,* 152 Kan. 590, 106 P. 2d 715, syl. ¶ 3, and cases cited in the opinion.) But so considered, we have an oral contract with a present liability on the part of the promisor on which the statute of limitations would ordinarliy run in three years (G. S. 1935, 60-306, *Second*). It is contended that subsequent oral promises revived, renewed and kept that promise alive. In theory that contention may be good, but that such a contract so renewed or revived may be asserted or relied upon, does not follow. It is provided by G. S. 1935, 60-312, that:

"In any case founded on contract when . . . an acknowledgment of an existing liability, debt or claim, or any promise to pay the same shall have been made, an action may be brought in such case within the period prescribed for the same, after such . . . acknowledgment or promise; but such acknowledgment or promise must be in writing, signed by the party to be charged thereby."

The acknowledgment in the present case was not in writing and served no purpose. Evidence concerning it was inadmissible.

During the course of the trial, plaintiffs made many objections to defendants' evidence on the theory that their defenses were barred by the statute of limitations. At those times defendants insisted the matters being urged by them were in the nature of pure defenses and not counterclaims or setoffs. The trial court had not compelled them to elect whether they stood on one or several alleged oral promises, whether they were affirming the contract for the purchase of the motor-cultivator and seeking damages or whether they were attempting to have that contract set aside for fraud. As has been pointed out, the jury by its answers to special questions resolved the conflicts and found Wilbur Sink purchased the machine. It was undisputed his purchase from the Avery Company was under written warranty, and the jury found that plaintiff's obligation was that if the machine did not perform the work it was designed to do and if Avery Company did not credit all money involved, plaintiffs would. There was no evidence and no finding of fraud. Nor was there any evidence that Wilbur Sink ever made any demand on Avery Company either under his written contract or otherwise. The evidence did show that the note for the first tractor was merged with other indebtedness of Wilbur Sink and Jennie Sink in a note given over nine months before the second motor-cultivator transaction, and that the second transaction was in full settlement of any disputes concerning the first machine. The second transaction had no connection with the giving of any note and was not coincident with any note.

In *Muckenthaler v. Noller,* 104 Kan. 551, 180 Pac. 453, suit was brought by plaintiffs to enforce contribution from defendants on a note signed by plaintiffs and defendants and which plaintiffs had been compelled to pay. The trial court held that the defense that defendants' signatures were procured by fraud was barred by the statute of limitations. On appeal, this court reviewed our authorities and, notwithstanding a vigorous dissent by Burch, J., held:

"Statutes of limitation are not applicable to mere defenses." (Syl. ¶ 3.)

"Section 24 of the code of civil procedure, which declares that, 'When a right of action is barred by the provisions of any statute, it shall be unavailable either as a cause of action or ground of defense,' is construed to mean that a barred right of action cannot be used as a setoff, or counterclaim, or for the purpose of obtaining affirmative relief, but not to apply to matters of pure defense." (Syl. ¶ 4.)

The rule there stated has been followed in later cases: *Wyatt v. Collins,* 105 Kan. 182, 189, 180 Pac. 992; *Trager v. Elliott,* 106 Kan. 228, 233, 187 Pac. 875; *Wilson v. Glenn,* 123 Kan. 16, 18, 254 Pac. 694. In *Kunze v. Kunze,* 145 Kan. 72, 64 P. 2d 558, the rule was not applied where the defense amounted to a contest of a will. In *Poss v. Steiner,* 118 Kan. 595, 236 Pac. 640, defendant sought in a quiet-title action, based on a sheriff's deed to plaintiff, to recover the value of certain improvements placed on the land by him before he was ejected, his answer being filed almost five years after his ejectment. He sought to invoke the rule of *Muckenthaler v. Noller,* supra, and it was there held his right to recover for the improvements was not a defense and the rule did not apply.

In the cases where the rule stated was applied, the defensive matter was connected with and grew out of the same transaction or matter which formed the basis of the plaintiff's claim.

The question is whether the failure of the plaintiffs to perform the contract the jury found they made on September 25, 1920, was a pure defense to the note sued on. As has been stated, the note for the first motor-cultivator was merged with other indebtedness which at the above date was for the sum of $4,500. When the second motor-cultivator transaction was had, all matters concerning the first transaction were settled, as is alleged in the answer. The new agreement was separate and apart from the then existing note. It obligated the plaintiffs only in a secondary way; the primary obligation was that of the Avery Company. Those new obligations were no part of the note, did not grow out of the note, the note did not grow out of the transaction, and there was only an indirect connection between the two. Had the note been due on September 26, 1921, and an action then been brought upon it, the transaction of the day before would not have been a defense. Was the situation altered because later the motor-cultivator did not stand up to the primary warranty? The defendant Wilbur Sink had a distinct cause of action against the Avery Company and the plaintiffs on account of the transaction of September 25, 1921, which was separate and apart from the note. Timely begun, that cause of action might have been the basis of a counterclaim or setoff, but defendant, Wilbur Sink, permitted that cause of action to become barred by the statute of limitations, for, as has been heretofore shown, the statute was not tolled by subsequent oral promises. Under the special finding as to the agreement of September 25, 1921, the default of plaintiffs with

respect thereto was not a matter of pure defense to the note, the statute of limitations was applicable and judgment should have been rendered for plaintiffs.

Other contentions discussed in the briefs do not require attention.

The judgment of the trial court is reversed, and the cause remanded with instructions to render judgment in favor of the plaintiffs and against the defendants.