No. 36,306

ESTELLE F. LORTON, Executrix of the Estate of James Lorton, Deceased, *Appellant,* v. RALPH F. HENDERSON and NEVA L. HENDERSON, *Appellees.*

No. 36,307

ESTELLE F. LORTON, Executrix of the Estate of James Lorton, Deceased, *Appellant,* v. RALPH F. HENDERSON and NEVA L. HENDERSON, *Appellees.*

No. 36,308

ESTELLE F. LORTON, Executrix of the Estate of James Lorton, Deceased, *Appellant,* v. RALPH F. HENDERSON and NEVA L. HENDERSON, *Appellees.*

(158 P. 2d 373)

Opinion filed May 5, 1945.

*L. S. Roberts,* of Winfield, argued the cause for the appellant.

*W. L. Cunningham,* of Arkansas City, argued the cause, and *D. Arthur Walker* and *William E. Cunningham,* both of Arkansas City, were on the briefs for the appellees.

The opinion of the court was delivered by

HARVEY, C. J.: These were separate actions brought by the executrix of the estate of James Lorton, deceased, on three promissory notes and to foreclose real estate mortgages given to secure the payment of the respective notes. The parties and the legal questions argued are the same in each case. The appeals are from orders of the court overruling plaintiff's demurrers to defendants' answers.

Each of the petitions, filed April 9, 1943, so far as here pertinent, alleged that on May 28, 1941, the defendants, Ralph F. Henderson and his wife, made and executed their promissory notes to James Lorton by which they promised and agreed to pay him the sum of $5,242.58 in the note sued on in case No. 36,306, $27,140 in the note sued on in case No. 36,307, and $8,000 in the note sued on in case No. 36,308, and at the same time they executed and delivered to James Lorton their separate real estate mortgages upon certain land owned by them to secure the payment of the respective notes. Copies of the notes and mortgages were attached to the petitions and are in the form frequently used in making real estate loans. Each of the notes recited that it was due May 28, 1946, that it was given "for value received," that the amount of the note should bear interest at the rate of 4½ percent interest, payable semiannually, according to interest coupons which were attached, and that if there was default in payment of the interest or of any of the conditions of the mortgage securing it, then the holder of the note, at his option, might declare the principal sum with accrued interest due, and that the same might be collected immediately; and further recited:

"This note is given for an actual loan of the above amount, and is secured by a mortgage, of even date herewith, which is a first lien upon the property therein described."

It was alleged that the plaintiff was the owner and holder of the note and mortgage and that there had been default in the payment of certain interest coupons, by reason of which the principal of the note with accrued interest had become due. In addition to other pertinent matters the mortgage contained the recital that the mortgagors "are justly indebted unto" the mortgagee in the sum stated in the note, "being for a loan thereof" made by the mortgagee to the mortgagors and payable according to the tenor of the note. It also contained a provision for the acceleration of the due date of the principal sum secured by the mortgage upon default of the payment of interest or taxes.

The prayer was for judgment against both defendants for the amount of the note, with interest, and for the foreclosure of the real estate mortgage.

Other than the necessary differences in describing the separate notes sued upon and the separate tracts of land described in the mortgages the petitions were identical; except that in suit No. 36,308, by appropriate allegations, plaintiff sought to bar the title

or rights which might be claimed by G. M. Smith under a deed purporting to convey an undivided one-half interest in and to the oil, gas and other minerals in and under and that might be produced from the land described in the mortgage, which deed had been executed by Ralph F. Henderson and wife to G. M. Smith and filed for record August 3, 1942; and further sought to recover a large, well built "race horse" barn situated on the mortgaged property at the time the mortgage was executed and recorded and which the defendant, Ralph F. Henderson, later moved and placed on a temporary foundation on land not described in any of the mortgages in suit and on which land Henderson later attempted to obtain, or obtained, a mortgage from the P. H. Albright Farm Loan Company, in the course of which Henderson agreed with Lorton to procure from that mortgagee a letter stating that the mortgage he was placing thereon did not include the race horse barn, which letter was procured and delivered to Lorton or his attorney on or about October 6, 1942.

An answer was filed in each case which contained a general denial of material allegations of the petition not specifically admitted; admitted the residence and postoffice address of the parties; the appointment and qualification of plaintiff as executrix of the estate of James Lorton, deceased; that Neva L. Henderson is and was at all times mentioned in the pleadings the wife of Ralph F. Henderson, and that Henderson was and is the owner of the real property described in the respective mortgages subject to certain oil and gas leases of record, and further admitted that the defendants signed the notes and mortgages sued on; that the mortgages were duly recorded and the registration fee and tax paid thereon.

Defendants further alleged that the notes and mortgages were executed under the circumstances and because of the promise and agreement of James Lorton, later mentioned, and would not have been executed otherwise. In the further summary of the answers the word "defendant" means Ralph F. Henderson unless otherwise indicated. The answers alleged that defendant's father had been a patron of the Winfield National Bank, of which James Lorton was president and the chief managing officer for many years, and about twenty-five years ago introduced defendant to Mr. Lorton and expressed the hope that Lorton would deal with defendant in the same manner as he had dealt with the father, which Lorton assured defendant he would do; that by reason of these circumstances he had

confidence in the bank and Lorton and immediately began transacting business with the bank, many of which transactions were carried on in the name of Lorton; that beginning early in 1931 Lorton urged defendant to borrow money from him or the bank for the purpose of purchasing livestock to be grazed and fed upon the farm and pasture land owned by defendant; stated the bank or Lorton would loan the money on the security of the livestock if defendant, when he sold the same from time to time, would remit the proceeds to the bank or Lorton, and that he, Lorton, would keep an accurate account of money received and give defendant proper credit therefor; that relying thereon defendant purchased large numbers of livestock from time to time, gave Lorton notes for money with which to make such purchases and to purchase feed for the livestock, executing mortgages on his real estate to secure the payment of the moneys borrowed, and that he sold livestock, feed, grain and hay from time to time and leased land for oil and gas and sold royalty interests, and some of the land was condemned for highway purposes, and that the proceeds of these sales, leases and condemnation moneys were paid to Lorton to apply upon defendant's indebtedness; that notwithstanding these payments the "notes constantly grew bigger and bigger, as the same were renewed from time to time"; that upon oral complaint of defendant at such renewals Lorton would state that the amounts specified in the notes were what the books showed; that he would check up and see if there had been any mistake, and if so it would be corrected so defendant would not have to pay more than was actually due; that on some occasions when notes were renewed the old notes would not be delivered to defendant, Lorton stating that he desired to keep the old notes as memoranda in checking up proper credits, and that the same would be delivered to him, but that this was never done.

It was further alleged that on or about May 28, 1941, Lorton asked defendant to renew his notes in the sum for which these suits were brought, aggregating $40,382.35; that defendant "orally protested that any such amount was due or owing to" Lorton; that Lorton thereupon stated "that he had caused the records to be thoroughly checked" and that defendant "had been given proper credit, for all sums paid to or received by" Lorton from defendant, "and all oil and gas leases and royalties and road condemnation money due" defendant had paid to Lorton, and if defendant and his wife would sign the notes and mortgages securing the same "and it should later

develop that" defendant "had not been given proper credit, he, James Lorton, promised, agreed and guaranteed that such credit should be given, and that this would apply to any and all of the old or former notes and transactions between the parties, which would remain open for adjustment."

That at the same time, as a part of this transaction and for the purpose of inducing defendants to sign the notes and mortgages, Lorton agreed thereafter, from time to time when the same was requested by defendant, to loan him money in an amount up to $6,000 with which to purchase cattle to be fed and pastured by defendant on the security of a mortgage therefor on the cattle so purchased and to carry the loan for such reasonable time as might be necessary to prepare the cattle for market; that, relying upon these representations, the defendants signed the notes and mortgages sued upon here and would not have done so except for such representations.

That in fact there was nothing due from defendants to Lorton at that time; that all prior notes, including the ones of which these notes were renewals, had been fully paid and discharged, and that Lorton had, prior to that time, received and appropriated to his own use proceeds of cattle, livestock, hay, grain and feed, oil and gas rentals, and oil and road condemnation money, from the time defendant began transacting business with him, in amounts in the aggregate in excess of all sums loaned and advanced to defendant with interest thereon, and that at the time of signing the notes and mortgages sued on in these actions there was and had been nothing due from defendant to Lorton.

It was further alleged that at the time of making the agreements when the notes and mortgages sued upon were executed Lorton had no intention of keeping or performing them, but on the contrary intended not to do so; that beginning in June, 1941, and repeatedly until June, 1942, defendant orally requested of Lorton a loan of not to exceed $6,000 to purchase and feed cattle, informing Lorton that he had sufficient pasture and feed and offering to secure Lorton by a mortgage on the cattle; that at first Lorton put defendant off, giving as a reason that the cattle market was uncertain, and finally in June, 1942, when such request was made Lorton stated "that he would not and never intended" to make defendant a loan to purchase livestock; that if Lorton had kept his promise to make such loan defendant could and would have purchased, pastured, fed and fattened not less than 250 head of cattle, on which he would have made a profit of not

less than $12,500, which sum defendant has lost by reason of the refusal to make such loan; that by reason of the promises the notes and mortgage sued upon were wholly without consideration; that defendants are entitled to a full accounting of all sums received from Lorton for and on behalf of defendants and of all sums loaned to them.

The prayer was for an accounting between plaintiff and defendants of the sums loaned or advanced by Lorton to defendants since January, 1931, with interest thereon, and the sums paid by defendants to Lorton, or received by Lorton for the account of defendant; that the court find that at the time of the signing of the notes and mortgages sued upon nothing was due plaintiff, and that the plaintiff take nothing by these actions. The answer in each case was verified by Ralph F. Henderson on information and belief.

The answers were identical in each of the cases except in case No. 36,306 there are additional allegations to this effect: That at the time the note and mortgage were executed, and for the purpose of inducing defendant and his wife to execute them, Lorton orally promised and agreed that if defendant would secure a federal loan in the amount of $2,740 on the security of the land described in the mortgage he would cancel the note and release the mortgage upon the property and would do all things necessary to aid defendant to secure such loan, which promise was relied upon by defendant and his wife; that Lorton at the time had no intention of keeping or performing the promise; that thereafter defendant began negotiations for a federal loan and was advised that he must first get a written statement from Lorton giving the amount he would accept in satisfaction of his note and mortgage; that he requested Lorton to give him such a statement and Lorton refused to do so, for which reason defendant was unable to make the federal loan, and that this resulted in loss and damage to defendant in the sum of $2,502.38.

Thereafter plaintiff filed a motion in each case that defendants be required to make their answers more definite and certain by stating, *first,* the date of payment and the amount of the proceeds of cattle and hogs which were turned over to Lorton; *second,* the date of payment and the amount of the proceeds of feed, grain, hay, cattle and other livestock which were turned over to Lorton; *third,* the date of payment and the amount of the royalty interests which were turned over to Lorton; *fourth,* the date and amount of money received for condemnation of his land for highway purposes which

was turned over to Lorton; and, *fifth,* that defendants be required to state the dates of payment and the amounts of any and all sums paid to James Lorton which were not credited by Lorton upon the notes and obligations of defendants. The court heard the arguments of counsel upon this motion and sustained it as to the third and fourth paragraphs of the motion, but denied it as to the first, second and fifth paragraphs.

Thereafter defendants filed an amendment to their answers in which it was alleged that sometime in September, 1937, the royalty payments were made directly by one Josh Wallace to Lorton and did not pass through the hands of defendants, for which reason they did not know the amounts thereof nor the exact date of the payment; that the condemnation money was paid sometime in June, 1938, the exact date being unknown to defendant, and that the amount thereof received by Lorton was $2,271.40, as defendants are informed and believe.

Thereafter plaintiff filed in each case a demurrer to the amended answer of defendants upon the grounds, *first,* that the answers did not state facts sufficient to constitute either a cause of action or a defense to plaintiff's petition, and, *second,* that they show on their face that the court has no jurisdiction of the person of the defendants or the subject matter of the action in regard to the matters alleged as a defense. These demurrers were argued to the court and overruled, and appeals were taken from such rulings.

Appellant argues that the answers pleaded no valid defense to the notes and mortgages sued upon. We think the point is well taken. Each answer begins with a general denial of material allegations of the petition not specifically admitted and then admits everything necessary for plaintiff to take judgment upon the notes and mortgages. The answer then alleges circumstances under which defendant began transacting business with the bank and Lorton. This presents no unusual situation, neither does it state any defense to the notes sued upon. The extent of his business transactions with the bank and Mr. Lorton for the first twelve or fifteen years is not disclosed, but appears to have been substantial, and to have been transacted satisfactorily with both parties. In 1931 defendant embarked in or extended his activities in the livestock business, for which Mr. Lorton loaned him money. We regard it as of no legal importance at whose suggestion that was done, or whether Mr. Lorton "urged" it. There is no suggestion in the answer that defendant

was not free to do as he thought best about the matter. As pleaded, the arrangement was that Lorton would loan defendant money to buy cattle on the security of the cattle purchased, and also would loan him money to buy feed for such cattle, the proceeds of cattle sold to be returned to the bank or Mr. Lorton, who was to keep an accurate account of the matter and give defendant proper credit therefor. That in pursuance of this arrangement defendant purchased large numbers of cattle and hogs from time to time, borrowed money from Lorton, and gave him notes therefor with which to purchase and feed the cattle, and executed mortgages on his real estate to secure the payment thereof, and that when the livestock was sold the proceeds thereof were remitted to Lorton; that Lorton also received remittances for feed and grain sold, for leases and royalty interests on defendant's land, and for the award of the condemnation proceedings to apply upon defendant's indebtedness; that these notes and mortgages were renewed from time to time; that notwithstanding the moneys sent to Lorton to apply upon defendant's indebtedness his notes at the renewal thereof "grew bigger and bigger." This catchy phrase states no legal defense to the notes given. Any man in the conduct of his livestock or other business, using borrowed money, may be confronted with that situation without any fault of the one who loaned him money. It was alleged that at the renewal of these notes, upon defendant's oral complaint, Lorton stated that the amount was correct as shown by the books; that he would check the matter again and if there had been any mistake the same would be corrected, and that sometimes when the note was renewed the earlier one was not given to him, Mr. Lorton stating that he needed it for use in checking his records.

On May 28, 1941, Lorton asked defendant to renew his note and stated the amount then due. Defendant did not then claim that nothing was due Lorton—that claim was not made until the answers were filed in these suits more than two years later. He did protest the amount, but on being advised by Lorton that the records had been checked and defendant had been credited for all sums received by Lorton on his account, defendants signed the notes and mortgages sued upon. We think this is a typical case of an account stated which defendants agreed to pay. See *Reed v. Thomas,* 134 Kan. 849, 8 P. 2d. 379, and authorities cited therein, and in the annotations on this point in 84 A. L. R. 110, 114-117. This would be true even if defendant had some cross-demand in the nature of a

set-off or counterclaim. The doctrine of an account stated is applicable to a statement of an account made by a bank to its patron. See *Kansas City Title & Trust Co. v. Fourth Nat'l Bank*, 135 Kan. 414, 10 P. 2d 896, and authorities cited therein, and in the annotation on that point in 87 A. L. R. 334, 344. See, also, *McCarthy v. Sink*, 152 Kan. 659, 668, 107 P. 2d 790, and authorities there cited.

While defendant alleges that Lorton agreed he would keep accurate account of the proceeds of livestock, etc., sold, the proceeds of which were remitted to the Winfield National Bank or to Lorton, and apply such proceeds on defendant's notes from time to time and give defendant proper credit therefor, he does not specifically allege that either the bank or Lorton failed in any instance to give him proper credit for such proceeds received. When plaintiff moved that defendant state any such instance defendant successfully resisted the motion. We think it clear the court erred in its ruling upon the motion. Certainly plaintiff was entitled to know what item or items the bank or Lorton received for which defendant was entitled to credit and for which the bank or Lorton had failed to give him proper credit. Without such knowledge plaintiff would be unable properly to plead so as to form definite issues for trial. In view of plaintiff's motion that defendants' answers be made definite so that he could plead to them in a way to form specific issues for trial, defendants are not entitled to a liberal construction of the answers. Indeed they must be construed strictly against them and in accord with the view that defendant has pleaded all he can that is in his favor.

Defendant alleges that Lorton agreed to keep an accurate account of proceeds received by the bank or Lorton for his account and give him proper credit therefor, but nowhere did he plead that he did not know what proceeds for his account were received by the bank or Lorton, nor does he plead that he did not know how the proceeds for his account, received by the bank or Lorton, were credited. In the absence of such allegation and in view of the fact that from the answers it appears the personal and business relations between the bank and Lorton on the one hand and defendants on the other were amicable until some months after the notes in suit were executed, we may assume that the customary relations between a bank and its patrons existed between the bank and its managing official, Lorton, and defendant; that the bank delivered to defendant from time to time over the years he transacted business with it statements

showing credits to his account, checks drawn thereon, and the state of the account at the time each statement was received, and that Lorton advised him from time to time, and at any time upon his request, of the credits which had been placed upon his note and the balance due thereon. Certainly none of these things is specifically negatived by any allegation in the answers.

Neither the bank nor Lorton is specifically charged with fraud or concealment respecting any item received for defendant's account or with the manner in which any such item was credited. When defendant was asked to execute the notes in suit he made no contention that he was not indebted to Lorton. We think the reasonable inference from the answer is that he knew he was indebted to Lorton but did not know the specific amount. The only protest he made was respecting the amount of his indebtedness. When Lorton advised him that was the amount the books showed he made no request to see the books, nor did he question their accuracy nor the fidelity of Lorton's accounting. It is alleged that Lorton stated to him that if it should develop he had not been given proper credit for any item he would see that such credit was given. The date of Lorton's death is not shown by the pleadings, but they indicate clearly that he was living as late as October, 1942, and that up to that time defendant had never questioned the accuracy of Lorton's statement with respect to the amount due, nor had he indicated to Lorton that he should have received credit for any item for which credit had not been given. It was only after Lorton's death and his executrix had sued upon the notes and to foreclose the mortgages given to secure them, and more than two years after the date of their execution, that he filed ambiguous, indefinite charges. He was even then unable, or at least unwilling, to point to a single item for which he should have had credit and for which credit had not been given. It is true the answer contained the general charge that—

"James Lorton had, at and prior to said time [the notes and mortgages in suit were executed] received and appropriated to his own use, proceeds of cattle, livestock, grain, hay, feed and oil and gas rental and royalty, money and road condemnation money, from the time Ralph F. Henderson began transacting business with him, amounts in the aggregate far in excess of all sums loaned and advanced to these defendants or either of them, and all interest thereon."

We decline to treat this language as an allegation that Lorton had embezzled from defendant more than $40,000 in the approximately twenty years defendant had been transacting business with

the bank and with Lorton. If that is the purpose of the pleader the allegation falls far short of being sufficient to sustain such a charge or a recovery of any amount. The answer indicates that defendant had transacted business with the bank for approximately ten years before he borrowed any money from Lorton. There is nothing elsewhere in the petition to indicate that defendant had paid Lorton any sum over those years unless it was paid to him as the managing officer of the bank. Neither is it alleged that the sums he paid at that time were not properly credited to his account; nor is it alleged in this quotation that any of the money received by Lorton was not properly credited to defendant's account; and of course if it was properly credited the bank or Lorton would have been entitled to use it. We regard the statement as being too indefinite and uncertain to charge any specific wrongful act on the part of Lorton or of the bank.

Respecting the alleged promises of Lorton made at the time the notes and mortgages in suit were executed as to what he would do for defendant at some indefinite time in the future not much need be said. Ordinarily such promises are not actionable. But it is alleged that Lorton had no intention when he made the promises to fulfill them; and cases are cited that such conduct constitutes fraud. The contention is unavailing here, for defendant makes no effort to set aside the instruments in suit on the ground of fraud which induced their execution. He makes no offer to restore plaintiff to the situation Lorton was in with respect to defendant's indebtedness. In the prayers to the answers he makes no specific claim for any type of relief because of these alleged promises. Each of them is of a type which the answers indicate depends upon future considerations for its fulfillment. The alleged promises of Lorton to loan money to buy cattle and take as security a mortgage on the cattle certainly would depend upon the condition of the cattle market and other pertinent matters at the time the loan would be requested. No complaint is made of the alleged refusal of Lorton to make the loan upon the ground the cattle market was too unstable to justify it. The real complaint is that when in June, 1942, defendant asked Lorton to make the loan, Lorton refused and stated that he "never intended to make" such a loan to defendant. This may have been occasioned in part by the fact that the defendant at that time was several months in default in the payment of interest upon the notes in suit. The damages alleged to have resulted from Lorton's failure

to make defendant a new loan to buy cattle are too general and too speculative in character to form the basis for relief in damages, which may be the reason defendant prays for no such relief. Much of what has been said respecting the alleged promise to make a new cattle loan applies to that portion of the answer in the action on the $5,242.38 note and mortgage about Lorton's agreement to take a less amount and release the mortgage if defendant could get a federal loan on the land. In addition thereto the answer clearly pleads a consideration for the full face value of that note; otherwise it would be impossible for defendant to pay $2,740 on the note and still lose $2,502.38 as a result of Lorton's failure to cancel the note and release the mortgage upon receipt of the $2,740. Defendant does not seek to set aside any of the notes and mortgages in suit because of the alleged promises made by Lorton without intent to perform them, and the answers are lacking in material allegations to justify such a decree. Neither does defendant ask for damages as a result of such failure, and the answers lack material allegations necessary to justify a judgment for damages. Counsel for appellees, both in oral argument in this court and in the brief, advise us that the trial court informed counsel for plaintiff at the time of an argument in that court that the court would strike out all of the allegations of the answer pertaining to these alleged promises if plaintiff would file a motion therefor. Counsel for appellees states that he does not know why plaintiff did not file such a motion. We shall not attempt to answer the question further than to say that in our judgment all of the allegations pertaining to those matters stated no defense to the notes sued upon. Hence, from a legal viewpoint, it is not very material whether the allegations were stricken out of the answers or left in them.

In arguing the second paragraph of his demurrer to the answers appellant contends that any damages or other relief claimed by defendant because of the alleged promises made at the time the notes and mortgages in suit were executed should have been presented to the probate court, citing *Malcolm v. Larson,* 158 Kan. 423, 148 P. 2d 291. We need not determine which of the rules stated in the syllabus of that case is applicable here in view of the conclusion we have reached respecting such promises.

Appellant argues that defendants are estopped from contending that the notes sued on were without consideration, and in support

thereof cites *Howell v. Flora,* 155 Kan. 640, 127 P. 2d 721, where it was held:

"One who gives a note in renewal of another note, with knowledge at the time of the failure of consideration for the original note, or of false representations by the payee, or of fraud in the execution of the original note, or if he had knowledge of facts sufficient to put him on inquiry, and by the exercise of ordinary diligence he could have discovered the facts constituting such defense, he waives such defense and is estopped to set the same up to defeat recovery on the renewal note." (Syl. ¶ 5.)

The authority would be in point here if defendant had alleged that the notes for which these in suit were renewals lacked consideration or had been obtained by fraud; but, as previously noted herein, no such an allegation is made. Indeed, the answers indicate that defendant had confidence in Lorton and the bank and had no occasion at the time the instruments in suit were executed to charge them with fraud or to contend that the prior notes were without consideration. Perhaps the court should say that while the rule of law stated in the syllabus last quoted was appropriate and properly applied in the case in which it was used, the court should use care in its application to other or different statements of fact asked for. However, this much is applicable here: Defendant knew at the time he executed the instruments in suit all about his liability to Lorton which he knows now. He does not claim to have learned anything about the matter since that time. If he did not know all about it then, he had the means of acquiring such knowledge. If he desired an accounting with Lorton that was the time to seek it. It is contrary to the normal conduct of business and lacks every element of fairness for him to make no claim at that time that he was not indebted to Lorton in any sum and wait more than two years, and after the death of Lorton, before making such a claim. These facts eliminate the application of equitable principles on behalf of defendant.

Defendant cites G. S. 1935, 52-305, which so far as here pertinent reads:

"Absence . . . of consideration is matter of defense as against any person not a holder in due course; . . ."

The rule of law stated is sound and has been applied frequently, as is shown by the cases annotated in the statute under the section. We think it cannot be applied to the answers of defendant here for these reasons: The answers admit plaintiff's capacity to sue, that defendants executed the notes and mortgages and set out the circum-

stances under which the notes and mortgages were executed. As we interpret these circumstances they themselves show a valid consideration for each of the notes sued upon. Other matters alleged in the answers do not negative those facts pleaded which show the consideration. On this point counsel for appellees cites *Garrison v. Marshall*, 117 Kan. 722, 233 Pac. 119; *Cambridge State Bank v. Dwyer*, 131 Kan. 148, 289 Pac. 423, and *Allen County State Bank v. Wilson*, 140 Kan. 577, 37 P. 2d 1002. In each of these cases the facts pleaded, and in some instances found by the court, differ materially from those which make up the gist of defendant's answers here, as a reading of the cases will disclose. We have examined other authorities cited by counsel, but in view of our analysis of the answers we find no occasion to discuss them.

Under the answers as pleaded we think the only defense defendant had to the notes was to plead some specific item which had been received by the bank or Lorton and for which defendant should have had credit and for which credit was not given. Defendant failed to do this and was successful in defeating plaintiff's motion that he be required so to do. As the answers stand we think plaintiff would have been entitled to judgment on the pleadings had he made a motion therefor. Whether defendant can now amend these answers and plead such items effectively in view of the lapse of time and changed conditions we shall not attempt to decide, for that specific question is not before us.

We think the court erred in not sustaining the first grounds of plaintiff's demurrer to the answers, namely, that the answers state no facts which constitute a defense to plaintiff's petitions, and that the judgment of the court overruling plaintiff's demurrers to the answers should be reversed. It is so ordered.